ROBERT M. HAMILTON, EXECUTOR,

v.

MARY V. DOWNER ET AL.

*Trusts—Administration.*

1. A promise to pay out of the proceeds to be obtained from certain real estate, gives no interest in, or lien upon the same.

2. Upon a bill filed by an executor against certain defendants wherein it is sought to charge with a trust certain real estate alleged to have been conveyed by one defendant to the other without consideration, the deceased husband of one of the defendants having been

indebted at his death to complainant's intestate, this court holds that while the letters in evidence apparently recognize the fact that one of the defendants held property in which said intestate had no interest, but to which she had the right to resort for, and from which said defendant expected to make, payment, such recognition was not enough to create a trust.

3. This court holds that it would not probably be held error in this State for a court of chancery to dismiss the bill of complainant in a case like the one presented, who would refuse to present for inspection the writings which the bill alleged were given by the defendants; but that in the case presented, the complainant having given the information called for, whether it is called oyer and relied upon by demurrer, or set up in an answer as the only writings, and the trust denied, is immaterial.

[Opinion filed December 29, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Messrs. SWIFT, CAMPBELL, JONES & MARTIN, for appellant.

Messrs. ASHCRAFT & GORDON, for appellees.

MR. JUSTICE GARY. The appellant, as executor of the last will, etc., of Jane Downer, filed a bill against Mary V. Downer and John S. Buhrer, which in effect alleged that Samuel A. Downer, husband of Mary and brother of Jane, died March 3, 1885, indebted to the latter upon promissory notes, having devised and bequeathed all he had to Mary and made her executrix. The will was probated. The whole estate was $437 personalty, and a homestead and a leasehold. Buhrer is the son-in-law of Mary and acted as her agent. She has conveyed to him, as the bill alleges, without consideration, real estate which the complainant seeks by his bill to charge with a trust, and the question of interest in the case is whether any such trust exists.

There is a question of practice arising in this wise: The bill alleged as follows: "And your orator further shows that after the death of the said Samuel A. Downer, and after the appointment of the said Mary V. Downer as exec-

utrix as aforesaid, and in order to induce the said Jane Downer to refrain from filing her said claim against said estate in the Probate Court of Cook County, the said Mary V. Downer, executrix and sole devisee as aforesaid, and the said John S. Buhrer as agent of the said Mary V. Downer, with the knowledge and consent of the said Mary V. Downer, undertook and promised to the said Jane Downer in writing, that she, the said Mary V. Downer, would pay the said claim of the said Jane Downer out of the estate of the said Samuel A. Downer, deceased, devised to her as aforesaid, or out of the proceeds of the sale thereof; that the said Jane Downer should have a voice in the matter of the disposition to be made of the property so held by the said Mary V. Downer, as aforesaid; that by reason of such undertaking and promise the said Mary V. Downer took the property of the said estate, devised to her as aforesaid, and holds the same and the proceeds thereof charged with a trust in favor of the said Jane Downer for the payment of the said claim of the said Jane Downer against the estate of the said Samuel A. Downer, deceased; that the said Jane Downer, having confidence in the said undertaking and promise of the said Mary V. Downer and John S. Buhrer, and relying thereon and upon said trust created in her favor, as aforesaid, refrained from filing her said claim in the Probate Court of Cook County until after the expiration of two years from the time when letters testamentary issued to the said Mary V. Downer as aforesaid, whereby the said Jane Downer lost all remedy against the said estate of the said Samuel A. Downer, deceased; that the said Jane Downer so refrained from filing her said claim in the said Probate Court solely with intent and desire to enable the said Mary V. Downer to avoid making a forced sale of the property of the said estate, and thus to save for herself, the said Mary V. Downer, some portion of the said estate, after the payment of the claim of the said Jane Downer, as aforesaid."

The appellees craved, and the court granted oyer of the writings relied upon. The appellees then demurred, setting

out the writings in the demurrer, and upon that demurrer the court dismissed the bill. The words "profert" and "oyer" are not found in chancery reports or treatises; the end, so easily accomplished at law by oyer, seems to have been attained too cheaply to suit the early chancellors. They drove the defendant, who wanted to know before the case came to a hearing, the contents of documents by which the complainant proposed to charge the defendant, to a cross-bill. 2 Dan. Chy., 1820. And the most extraordinary reason for compelling the defendant to wait until he had answered the complainant's bill, for knowledge of the documents on which the complainant relied, was that such knowledge would help him "to shape his defense."

It probably would not be held error in this State for a court of chancery to dismiss the bill of complainant in a case like this, who would refuse to present for inspection the writings which the bill alleged were given by the defendants. But in this case the complainant gave the information called for, and whether it is called oyer and relied upon by demurrer, the mode at law, or set up in an answer as the only writings, and the trust denied, seems to be immaterial. Certainly the method here pursued is a quick and convenient one for reaching the merits, and would seem deserving of encouragement; but, be that as it may, the complainant's case did thereby come before the court, and if the result is right the process will not be criticised. Burt v. Burt, 40 Ill. App. 536.

To save space, the writings relied upon, being letters from the defendants, will be here inserted only as shown in the appellant's brief, which omits immaterial parts. The complainant was, in the lifetime of Jane, who died May 27, 1890, her active friend; and the writings are letters to him, all but one, by Buhler, May 25, 1885, referring to the homestead:

"There is nothing serious in the way of selling it except that Mrs. Downer can not give a clear title to it until she is out of the hands of the Probate Court, some two years hence; still, even that difficulty could be arranged, I think,

with the purchaser, by proper assurance that there would be no claims filed against the estate. You see now, the only thing to do now to save Aunt Jane's interest is to sell it, and with realty as dead as it is now, even that chance is a meagre one. However, we do not despair, and so far as I am concerned, everything that is possible will be done. * * * I realize that Jane's *all* depends on the disposition of the homestead, and it is proper that she should know what is being done, and have a voice in the matter."

"CHICAGO, June 1, 1885.

"DEAR BROTHER ROBERT:

" Yours of the 28th inst. just received. Need I tell you it has added grief to my already saddened heart? I am painfully aware we have all Jane's money. She is constantly on my mind, and I pray something may turn up soon, that she can get what she so much needs. We have been trying in some way to get money to send her, but as yet everything has gone against us—the house not rented and very little prospect of it now. John has borrowed $2,200 to pay off the mortgage on the store or we should have lost that; besides, he has advanced over a hundred to pay off some debts. The doctors have not yet been paid, and many others I might mention.

" We are doing all we possibly can, and I can only hope for the best. Jane shall have my last dollar, that she knows; what more can I do? With love to all,

"Yours truly,

"M. V. DOWNER."

September 19, 1885:

" You said you did not think Aunt Jane cared for any of the principal at present. We calculate the house we took in trade to rent for enough to pay her interest, and are fitting it up to that end at an expense of $300 or thereabouts. We can not dispose of it at present as we had to mortgage it as well as the store to Judge Moran to secure him in his title to the homestead, and which he will hold, together with a bond for $31,000 given by Mrs. Downer and myself for the same end. The judge wouldn't accept the title under

any other circumstances and sooner than let the sale fall through we gave him the bond and mortgage. If Aunt Jane knew how much trouble we have had she would be very thankful to get even the interest just now. Mrs. Downer, you know, can not give a clear title till she gets her discharge from the Probate Court. We can sell nothing more now till after she gets her discharge, which will be in two years from last March."

October 3, 1885:

"Aunt Jane is perfectly safe in Mrs. Downer's hands and she need not be alarmed that she will not be treated fairly in every respect. Her claim stands on a par with all others, but being so large, the estate will have to be carefully handled to pay the interest as fast as it falls due. For reasons that I stated before, there can be no more property sold until Mrs. Downer gets her discharge from the Probate Court."

October 9, 1885:

"I think it would be better for all parties concerned if her claim could be settled in full at once, and would suggest that she accept a deed from Mrs. Downer to the house and lot No. 3239 Indiana avenue, that was taken in trade for the old homestead. Judge Moran, the former owner of it, paid $9,500 for it in 1874, and we have spent $300 on it to put it in good repair. It will rent for from $60 to $70 per month without doubt, and is worth, at a low estimate, the amount of Aunt Jane's claim, viz., $8,500, and $600 interest due thereon. She can then rent or sell it, as she chooses, and will save Mrs. Downer and myself the trouble of looking after it. This would leave Mrs. Downer the store and enough money to pay off the other indebtedness of the estate."

January 25, 1886:

"Now, what I would like to suggest is this: To close the affairs of the estate and save Mrs. Downer any anxiety from that direction; and I make it for that reason only; the estate can not be closed in law for another year, but when Aunt Jane's claim is satisfied, there will be no more that we know of, of any consequence, to stand in the way

Hamilton v. Downer.

of a final settlement. It has occurred to me, as I suggested before, that if Aunt Jane would take the Indiana avenue house for her claim, it would relieve Mrs. Downer of the care of that much of the estate, and Aunt Jane would receive full payment and could easily get enough rent from it to pay her interest until she could sell it. Mrs. D. can not look after it, and I am too busy with my affairs to give it much attention. * * * Let me know what you think of this. We are not disposed to crowd this settlement, but only offer it for your consideration."

March 1, 1886:

" I was very sorry to notice in your last letter, a dissatis- fied feeling at the way we were trying to manage affairs here. The proposition to turn the Indiana avenue house over to Aunt Jane was made in all kindness, and with the spirit of fairness for all concerned, and to relieve Mrs. Dow- ner, as well as myself, of the care of that much of the estate, but with no intention of taking advantage of any other claimants. We are managing affairs as best we can, and hope and believe everybody will get their dues in the end. It is to my interest as well as Mrs. Downer's, that every cent is properly accounted for. You are aware that I am on Mrs. Downer's bond for $31,000 to secure Judge Moran's title to the old homestead, and if there is not enough of the estate left to pay all claims, I can be and will be held responsible."

October 14, 1886:

" What cash money there is left from the sale of the homestead will barely cover debts still to be paid, which will leave Mrs. D. nothing but the uncertain income of the store with which to support herself and Lizzie. They have now gone to housekeeping in a small flat, and they will have to be very economical to get along at all. It was one of Mr. Downer's last requests that the store and any income derived therefrom, should go to Mrs. Downer, for her support as long as she lived. He hoped the homestead would sell for enough to pay off his debts, although the thought that it might not do so worried him more than we

can realize. * * * Now there still remains to pay Aunt Jane and Mrs. Hamilton, the Indiana avenue house, which is now rented for $60 per month for two years. This is six per cent net on a valuation of ten thousand dollars, the amount due Aunt Jane and Mrs. H. This sum can not be realized at once, but may be in time; at least, the rent of it will cover the interest. The house is in good order, over $400 having been spent on it in repairs. This puts the estate in better shape than Mr. D. ever hoped it was possible to put it, and if Aunt Jane and Mrs. H. should take the property, they would realize in time all that is due them, and take the trouble of caring for it off my hands, who have no personal interest in it whatever. This, it appears to me, is the best way to wind up the estate, and do justice to all parties concerned."

April 22, 1887:

"Your letter of the 8th inst. is to hand: I am sorry we have caused Aunt Jane so much worry about her interest money and I suppose I should have written before and explained matters, but I expected every week to get things in shape so I could send it. The Indiana avenue house has been vacant since the 1st of February, our tenant having vacated it without notice, and we depended on this rent to pay Aunt Jane's interest, as the store, when rented, barely gives Mrs. Downer and her family a living. The rent of the store expires May 1st, and the outlook for renting either place has looked very dubious, and it has taken a good deal of my time and not a little worry to get matters into better shape again. The house is again rented from May 1st next, and the prospect of re-renting the store is also good, although we will have to spend considerable money on the store to make it tenantable, as no repairs have been made on it for a number of years. This explains the position we have been in, and any forced sale of the property to satisfy claims would leave Mrs. D. without a cent for her support, while with a little patience it can be made to pay all just claims in time. I will endeavor to send you Aunt Jane's interest due March 1st by May 1st next, or sooner if possible."

Hamilton v. Downer.

March 31, 1888 :

" The Downer store is again vacant, former tenant having failed. We hope to be able to pay Aunt Jane's interest due March 1st, on or about April 15th. It is too bad she gets so excited about it, but we can not help our misfortunes and hope she will see it in that light. Mrs. Downer and her family have got to live as long as there is any way to provide for them. She has been unfortunate enough and worries more than anybody else over her affairs."

Quotation from appellant's brief: " It appears from the letter of Mr. Buhrer to complainant of September 7, 1888, that Judge Moran had requested a quit-claim deed from Jane Downer and others covering the homestead property, and Jane Downer appears to have refused to sign such deed. Referring to this refusal, Mr. Buhrer writes to complainant on October 5, 1888: ' You waive no rights to any claim on Mrs. Downer's property which you may have, by signing the deed.' This is the last communication between the parties which the record discloses. If, considering the relationship of the parties, the letters from which we have quoted do not show a recognition on the part of the defendants that they stood in a trust relationship toward Jane Downer, then this suit must fail."

The defendants, appellees, paid Jane her interest to December 1, 1887.

It is needless now to inquire whether from these letters, assuming whatever Buhrer wrote was the act of Mary, any promise to pay Jane out of the proceeds of any property can be gathered, as such a promise gives no interest in, or lien upon the property. Bromwell v. Turner, 37 Ill. App. 561, refers to the authorities, as well as decides the point.

The letters do doubtless recognize that Mary held property, not in which Jane had any interest, but to which she had the right to resort for, and from which Mary expected to make, payment of the debt due from the dead husband to his needy sister. That recognition is not enough to create a trust, charging the property, and the bill was rightly dismissed. The decree is affirmed.    *Judgment affirmed.*