W. W. Damron and Harry J. Flanders, Appellees, v. The City of Eldorado, Appellant.

Opinion filed March 13, 1939. Rehearing denied July 1, 1939.

A. W. SUMMERS, of Eldorado, for appellant.

KANE & SCOTT, of Harrisburg, for appellees; W. W. DAMRON and HARRY J. FLANDERS, *pro se,* of counsel.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs' complaint contains two counts, by the first which is in .equity they seek to impress an equitable lien upon certain funds and by the second they ask for a judgment on *quantum meruit.* It is shown that the city council of the defendant city was contemplating the improvement of certain streets and discussed with plaintiffs, who are licensed attorneys, certain legal questions in connection therewith. Following such consultations but before beginning the improvement the plaintiffs and defendants entered into a contract. The contract is in form a resolution of the council and an acceptance by the plaintiffs. It provides that plaintiffs ''agree to render all legal services in connection with said improvement which local improvement is to proceed under the Local Improvement Act of the State of Illinois and to render all services in connection with the court procedure, notices, assessments up to and in-

cluding the final confirmation of said improvement.''
The consideration stated was to be 4 per cent of the
estimated cost of the improvement. It was provided
''The City of Eldorado agrees to pay said legal serv-
ices and fees of attorneys out of money received from
the Motor Fuel Tax.''

It also appears from the evidence that the cost of
the improvement was to be met in part by a federal
grant of $12,500, the balance to be levied as a special
assessment proceeding, part against the property bene-
fited and part against the city as public benefits. The
engineer's estimate of the cost was $56,351.24 and as
an item of the cost there was included $3,018.82 engi-
neering costs and a like amount for spreading the as-
sessment, including court costs and legal expenses in
spreading the same.

The ordinance provided that the federal grant of
$12,500 should be applied on the cost and the balance
by special assessment, part against the property bene-
fited and part against the city for public benefits. The
part assessed against the city was to be paid solely
from the fund allocated to the city from the motor fuel
tax. The order entered in the county court confirmed
the roll assessing $41,709.16 as public benefits and
$2,142.05 against the property. The order further di-
rected that the amount assessed as public benefits
should be payable in 10 annual instalments and that it
should be payable from the motor fuel tax fund allotted
to the city by the department of public works and build-
ings and that no part of it should ever become a lia-
bility against the city. The department gave its ap-
proval of the proposed improvements. After the con-
firmation of the assessment roll in February, 1935 the
board of local improvements advertised for bids but
none were received.

Plaintiffs did all the legal work in connection with
the preparation and passage of the ordinance, securing

confirmation of the assessment roll and advertising for bids.

The improvement was never completed, the project having been changed in some details necessitating a new ordinance and new assessment roll. The council repealed the old ordinance.

By plaintiffs' first count they pray that the funds held in trust by the director of finance of the State (motor fuel tax fund) be subjected to an equitable lien in favor of plaintiffs for $2,012. By the second count they ask judgment on *quantum meruit*.

The decree entered from which the city has appealed provides for a judgment against the city for $2,012 and costs of suit, it found that plaintiffs did on August 16, 1935, file with the director of finance a claim for lien for $2,012, which amount was then in the hands of the department as an allotment to the city out of the motor fuel tax and ordered that plaintiffs have an equitable lien on the motor fuel tax funds allotted or to be allotted to the city in the sum of $2,012 and commanded the city to pay from the motor fuel tax that is payable to the city the said sum.

Plaintiffs' right to an equitable lien must find its basis in the contract, *Aldrich v. Ederer Co.,* 302 Ill. 391. No equitable lien would arise out of a recovery on a *quantum meruit.* Underlying the plaintiffs' right to an equitable lien is the question whether they have, under the contract a valid enforceable claim. An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a *jus in re* or a *jus ad rem;* neither a debt nor a right of property, but a remedy for a debt. *Aldrich v. Ederer Co., supra; Webster v. Nichols,* 104 Ill. 160.

The contract provides that the fees were to be paid from the motor fuel tax. The ordinance for the improvement and the order of confirmation exempted the city from individual liability for the payment of any of the public benefits assessed against it and directed that

they should be paid from the city's allotment from the motor fuel tax. In view of these provisions it is clear that the contract was drawn with the understanding that the only liability of the city to pay was from the motor fuel tax fund. Therefore it must be considered that the parties contracted subject to the provisions of the Motor Fuel Tax Act and that the contract does not create a liability against the city unless the funds are available to the city to make the payment.

Section 10½ of the Motor Fuel Tax Act, sec. 426½, ch. 120, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 85.110] specifies the purposes for which a municipality may expend the tax allotted to it. It is not necessary for a decision of this case to consider whether plaintiffs' claim for legal services would be included in the statutory specification of purposes as we are of the opinion that the facts of the case bring it within the provisions of the fourth paragraph following subparagraph 5. It provides that the council of the municipality shall pass an ordinance or resolution stating specifically the purpose or purposes for which the funds shall be used and such ordinance or resolution shall be subject to the approval of the department of public works and buildings.

The evidence shows that a few days after failure to receive any bids from contractors, the council passed a resolution specifying court costs, and the court expenses incurred in the making of the assessment roll and its confirmation by the court and included therein plaintiffs' attorney fee of $2,012. The resolution allowed each of the items and recited that the city then had on deposit in the department of finance of the State sufficient amount to pay the same and requested that the State officials issue vouchers against said funds due and owing to said city out of said funds now on hands. A proper authenticated copy of the resolution was filed by plaintiffs with the department of public works and buildings but it does not appear that the

department ever approved the same. It is true that the evidence shows that the department authorized the payment of funds to meet the engineers' compensation and that it approved the payment of certain amounts to meet the costs of the improvement constructed under the new plan but such payment could not be extended to include an approval of plaintiffs' claim. Plaintiffs are in no position to claim that the amount of their fees was included in the engineer's estimate of cost under the item of cost of making and spreading assessment including court costs and lawful expenses and that approval of the ordinance includes approval of the estimate for the reason that by their pleading they base their right to an equitable lien upon the fact that they have a contract and as pointed out their right to an adequate lien must arise out of the contract. Since plaintiffs' claim was never approved by the department they have no claim for services under the contract and have no right to an equitable lien.

Several other grounds for reversal have been raised but only one need be considered. Plaintiff Harry J. Flanders was at the time of making the contract with the city and rendering the services claimed for, holding the office of the judge of the city court of the defendant city. In *Wolf v. Hope,* 210 Ill. 50 and *Franklin v. Westfall,* 273 Ill. 402 it was held that a judge of a city court is a city official. The city is under the commission form of government and section 37 of the act, sec. 302, ch. 24, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.337] prohibits any officer of the city from being interested directly or indirectly in any contract or job for work or materials or profits thereof, or services to be furnished or performed for the city or village. Under statutory provisions of a similar nature it has been held that an officer of a city or other municipal corporation is prohibited from making any contract with the corporate authorities for services or materials for the corpora-

tion to be paid for out of the treasury and that such a contract is null and void and any money paid thereunder may be recovered back. *Village of Dwight v. Palmer,* 74 Ill. 295; *School Directors v. Parks,* 85 Ill. 338; *Lee v. City of Venice,* 206 Ill. App. 376. Under this statute Judge Flanders was barred from contracting with the city or being interested directly or indirectly in such contract or any services to be performed for the city. Such contract was null and void and services rendered by him cannot be recovered on a *quantum meruit.* Plaintiff Damron was not an official of the city but his services and interests are founded on the same contract and are not separable from Judge Flanders' interest.

The judgment is reversed.

*Judgment reversed.*