(No. 28798.—

FRANK BYRON, Appellant, *vs.* MARY M. BYRON *et al.,* Appellees.

*Opinion filed September 19, 1945.*

Dwight H. Doss, of Monticello, for appellant.

Bryan Wilson, of Bement, and E. J. Hawbaker, of Monticello, for appellees.

Mr. Justice Murphy delivered the opinion of the court:

This appeal is from a decree of the circuit court of Piatt county, which on motion of defendants dismissed plaintiff's complaint for want of equity. The subject matter of the litigation revolves around an 80-acre tract of land located in said county, the title of which was acquired by John Byron, appellant's father, in 1918. In February, 1940, he conveyed the tract to his two daughters, appellees herein, reserving a life estate to himself. The title thus conveyed was subject to a mortgage lien of $6000. In September, 1943, John Byron executed a second deed conveying the same tract, including the life estate reserved by the first deed, to the same grantees. He died intestate July 17, 1944, leaving appellees, appellant and two other sons, his only heirs-at-law. Appellant has cultivated the land since 1934 and has resided upon it since 1939. His first entry into the land in 1934 was pursuant to verbal arrangements made with John Byron. It is alleged that after the deeds were made to appellees, he negotiated with one or both of appellees in reference to his occupancy and cultivation of the farm. It is stated

that appellees were then acting for and on behalf of John Byron. In March, 1944, appellees started an ejectment action against appellant to obtain possession of the parts of the farm occupied and cultivated by him. A trial resulted in a judgment in favor of appellees. It appears that a receiver was appointed and leased the land to appellant for a period ending March 1, 1945.

In June, 1944, appellant started this suit making his two sisters and two brothers parties defendant. The mortgagee was not made a party. The brothers filed disclaimers and the cause was dismissed as to each of them. Appellant prayed that the two deeds from John Byron to appellees be set aside and the land partitioned among the heirs-at-law of John Byron as intestate property and that there be an accounting of the rents, issues and profits therefrom; that the value of certain improvements appellant had placed on the land during his possession be determined and that he be decreed an equitable lien in the land to the extent of such value; that there be a judicial determination of the amount of principal and interest due and unpaid on the mortgage and that there be an accounting of the principal of the mortgage indebtedness with a view of determining who received it and the purpose or purposes to which it was applied. It was prayed that an injunction be granted, restraining appellees from causing a writ of possession to issue in the ejectment action. The claims made in the complaint and the relief prayed, challenged by appellees' motion to strike, raise a question of a freehold, which gives this court jurisdiction by direct appeal. *Rossiter* v. *Soper,* 384 Ill. 47; *Wright* v. *Risser,* 378 Ill. 72.

The complaint is voluminous and contains many allegations which are inconsistent with others and with the relief prayed. Many of the allegations are mere conclusions of the pleader. Parts of the complaint are immaterial to the relief prayed. In short, it was subject to demurrer on

any one of several grounds. Appellees' motion to dismiss alleges fifteen different grounds but no attempt will be made in this opinion to enumerate the various grounds or to discuss the various allegations of the complaint.

It is elementary that a complaint, in order to stand, must contain sufficient averments of facts to state a cause of action. The complaint here does not state a case which, if proved, would warrant the setting aside of the two deeds given by John Byron to appellees. Some facts are pleaded which, if proved, would support a finding that John Byron was advanced in years when he executed the deeds and that when he executed the first deed he was suffering from physical and mental ills, but no facts are pleaded to show that his physical defects or mental deficiencies' were such as to render him incapable of making the first deed. The allegations that mental ills were present when the first deed was executed are not extended to show what his mental condition was when the second deed was signed. The complaint referred to certain things as fraudulent but no facts are stated to support such a conclusion. There are no facts stated showing a fiduciary relationship existing between any of the parties. In short, the complaint does not state a cause of action which, if proved, as alleged, would warrant a setting aside of the deeds. The complaint contains the general allegation that the deeds were without consideration. Such claim would not be material unless it was shown that John Byron was mentally incapable of making the deeds or that they were obtained by means of fraud or undue influence, for the reason that, in the absence of proof of such matters, John Byron had the right to convey his property without consideration if he should so elect, and upon his death an heir-at-law cannot attack the conveyance on the basis that there was no consideration.

Brief mention should be made of appellant's attempt to plead facts which would bypass the legal effect of an

instrument he and his two brothers signed the day the first deed was executed. The substance of it was that the signers approved the father's act in conveying the premises to their sisters, subject to the father's life estate. It also specified that at the father's death "such property shall be in their [appellees here] full possession." The effect of the instrument or its effect as estopping appellant from claiming an interest is not of so much importance as the light thrown on the purpose for which the deeds were given. This is found in that part of appellant's complaint where he seeks to avoid the effect such an instrument would have in defense of his claims and ex- plains it was executed under circumstances that he should be relieved from facing as a defense. It is alleged that appellant's brother Joseph told him that Walter, the other brother, owed various amounts, that the father was obli- gated on a part of Walter's debts and that if the father should die intestate, owning these premises, such creditors would take the estate to the exclusion of John Byron's heirs-at-law, and that the deed to the sisters was to hinder these creditors from collecting their claims. It is alleged that the representation by Joseph as to the father's lia- bility was false, but it is not claimed that Walter was not indebted as stated. We will not consider the effect of such representations for it is enough to say that appellant was lending his name to a scheme which equity does not sanction. No cause of action was pleaded upon which the deeds of John Byron to appellees could be set aside. *Brady* v. *Huber,* 197 Ill. 291; *McElroy* v. *Hiner,* 133 Ill. 156.

The facts pleaded which refer to appellant's claim that he was entitled to an equitable lien for improvements placed on the land are as follows: When John Byron bought the farm in 1918 it had a set of improvements thereon consisting of a house, barn, and other farm build- ings. John Byron and those persons who were members

of his family occupied the building from the time he acquired title to the date of his death. At that time appellant was a member of the family and continued to reside with John Byron on the said premises until his marriage in 1934. On his marriage he established a home for himself and wife in the village of Ivesdale, which was about two miles distant from the farm. It is alleged that beginning in 1934, for a four-year period, appellant operated the land and delivered all the crops and income to his father, that he did not receive any share of the income for his labor or expenses incurred nor was he compensated therefor. It is alleged that from time to time John Byron promised to pay for such services. In the absence of a more definite allegation it must be considered as though appellant came into the possession of the parts of the farm he cultivated as a laborer and not as a tenant of the owner.

After continuing in the operation of the farm for about four years, appellant alleges that in 1938 "John Byron suggested to the plaintiff that he [appellant] purchase a house and move it upon the eighty acres, to be suitable for himself and family to live in, and have the premises about the house improved by a yard, chicken range, chicken house, etc., that he might the better and more conveniently farm this land, representing that he, John Byron, would later compensate the plaintiff for such improvements and labor connected therewith." It is alleged that appellant, relying upon such promise, purchased a house and other buildings, moved them to the premises and added other buildings, all of the expense of $1940. A breach of the promise of John Byron is alleged and it is said that the improvements and the arrangements with which they were placed on the land all occurred with the knowledge of appellees. No facts are pleaded from which it can be concluded that appellant's occupancy of the lands changed after the buildings were erected. The relationship

of landlord and tenant was not established by the facts pleaded.

The right, under proper circumstances, to have an equitable lien against particular property and enforcible as such, has been recognized by this court. In *Aldrich* v. *Ederer Co.* 302 Ill. 391, it was said, "whenever parties enter into an express executory agreement in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other obligation, there is created an equitable lien on the property described in such contract which is enforcible in the hands of the original contractor, and also his heirs, administrators, executors, voluntary assignees, purchasers and incumbrancers with notice. (*Walter* v. *Brown*, 165 U. S. 654; 10 R.C.L. sec. 100.) An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a *jus in re* or a *jus ad rem;* neither a debt nor a right of property, but a remedy for a debt."

In the same case, 3 Pomeroy's Equity Jurisprudence, 4th ed. sec. 1233, was quoted with approval, as follows: "It is simply a right of a special nature over the thing which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action and either sold or sequestered 'under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists."

The facts stated in appellant's complaint are insufficient to show that he was entitled to an equitable lien against the property in question. It does not appear that the agreement was in writing or that the parties intended to make the particular property stand as security for the debt. The facts pleaded showed nothing more than a verbal promise of John Byron to pay for the improvements.

The views expressed as to the insufficiency of appellant's complaint to state a cause of action for the setting aside of the deeds from John Byron to appellees, and what has been said in reference to his claim for an equitable lien leave appellant without any interest, legal or equitable, in the land. Under such circumstances, it is not necessary to consider his prayer for relief where he asks that there be an accounting to determine the amount of the mortgage debt that remains unpaid or to determine to whom the principal of the debt was paid when the loan was made and the purpose for which it was used. These matters are of no concern to appellant and he is not entitled to the relief prayed. Furthermore, the relief asked was vital to the interests of the mortgagee and it is not a party to this action.

In the views expressed, no mention has been made as to the effect to be given the judgment entered in the ejectment action. The claim that it is *res judicata* as to some of appellant's demands has been disregarded for the reason that the facts in reference to such action are so indefinite and uncertain that it would be impossible to apply definite principles thereto. It is impossible to determine the circumstances under which the receiver was appointed or the rights that appellant has as a lessee of such receiver to stay in possession of the property. There is no basic fact to warrant action by a court of equity to stay the issuance of a writ of possession. Whatever rights appellant has, if any, as a tenant of the receiver, should be determined in the proceeding in which the receiver was appointed.

The decree of the circuit court was correct and is affirmed.

*Decree affirmed.*