Stanley Slusarz, Appellant and Cross-Appellee, v. Harriet Slusarz, Appellant and Cross-Appellee, Edward L. S. Arkema, Appellee and Cross-Appellant, Mitchell Kilanowski and Theodore A. Siniarski, Appellees.

Gen. No. 47,291.

First District, Third Division.
May 7, 1958.
Rehearing denied June 5, 1958.
Released for publication July 18, 1958.

Haskins, Maguire & Haskins, of Chicago (Robert E. Haskins and C. W. Eckert, of counsel) for appellants and cross-appellees.

Raymond J. Carroll, of Chicago (Harry G. Fins, of counsel) for appellee and cross-appellant.

JUSTICE BRYANT delivered the opinion of the court.

This appeal relates to (1) the right of the court to allow Edward L. S. Arkema, the intervening petitioner-appellee to intervene in this proceeding, and (2) the jurisdiction of the court to render a money decree or judgment in favor of the intervenor and against the plaintiff-appellant, Stanley Slusarz, in this proceeding.

The original proceeding was a complaint for partition filed by Stanley Slusarz, as plaintiff, against his wife, Harriet Slusarz, as principal defendant, alleging the joint ownership of improved property in the city of Chicago by the plaintiff and defendant, and requesting the customary relief in a partition complaint: that the property be divided between the owners; that if it was not susceptible to such division that it be appraised, sold and the proceeds divided between the parties as their several interests should appear. In addition to the joint owners of the property (the husband and wife), the complaint made all of the tenants in the rather large apartment building parties defendant, and the mortgage holders, and by proper allegations, unknown owners. It is to be noted that intervenor Arkema was not an original party defendant to the complaint.

The original complaint was filed on March 25, 1954. Less than three months thereafter, on June 15, 1954, intervening petitioner Arkema asked leave to file his intervening petition in the proceeding. He alleged that he was an attorney, and that Stanley Slusarz, and Harriet Slusarz, the principal defendant, were husband and wife; that for many years prior to May 1953 he had represented both of them in their legal matters and that from May 1953 onward they were

having domestic difficulties, in part relating to the operation and management of the property which was the subject of this complaint for partition; that he was able to effect a temporary reconciliation between them and that there were subsequent breaks and reconciliations. He alleged that finally, on December 8, 1953, both parties consulted with him—both asked him to represent them, and it was finally determined that defendant Harriet Slusarz should retain other counsel and that he should continue to represent the plaintiff, Stanley Slusarz, and that Stanley Slusarz would pay him the full amount due him for his services on behalf of both of said parties. He continued to represent Stanley Slusarz until March 1954, when he obtained other counsel, and that it was agreed that his reasonable fees, the amount of which was to be determined by the court, be paid him out of the share of the proceeds of Stanley Slusarz obtained from the sale of the property involved. He alleged that he had not been paid, and prayed that he be granted leave to intervene in this partition matter and a hearing be had to determine the amount reasonably due the petitioner, and that that amount be decreed to be paid out of the share of the proceeds of the sale of the property belonging to Stanley Slusarz. On that day, June 15, 1954, an order was entered without contest, showing that notice had been given to all parties in interest, allowing intervenor to file his petition, and giving the plaintiff, Stanley Slusarz, and the defendant Harriet Slusarz ten days to answer or otherwise plead.

Apparently nothing further transpired until November 30, 1955. On that day intervenor asked leave to file his supplement to the intervening petition, in which he alleged that neither the plaintiff nor the defendant had filed an answer to his original intervening petition, nor had they taken any steps to proceed with the suit for partition; that although they were living

28

separate and apart at the time of the filing of the suit for partition, since the filing of the intervening petition they had made up their differences and were now living together as husband and wife; that they had failed to respond when the case appeared on the trial call, in the hope that it would be dismissed for want of prosecution, and his right as intervening petitioner to collect his money from the sale of the real estate in this proceeding would be defeated. He prayed that the court direct a hearing upon the intervening petition and the supplement thereto to determine the amount reasonably due and owing to him, and that execution issue upon said decree as in a judgment at law, and that by proper decree of the court said real estate be impressed with an equitable lien for the amount of said decree or decrees. This was a sworn petition. On that day, November 30, 1955, the court entered an order which found that due notice had been given all parties in interest; and then ordered *inter alia* that leave was given to file instanter the supplement to the intervening petition of the intervening petitioner Edward L. S. Arkema, and that the plaintiff Stanley Slusarz and the defendant Harriet Slusarz plead or answer to the said intervening petition and the supplement thereto within ten days.

On December 28th leave was given plaintiff's attorneys to withdraw and the time to answer the intervening petition was extended for an additional ten days.

On January 9, 1956 a new attorney filed his appearance for both the plaintiff Stanley Slusarz and the defendant Harriet Slusarz, and an order was entered giving them ten days to file their answer to the intervening petition and supplement thereto, and said counsel on their behalf in open court made an oral motion to dismiss the complaint for partition. The order of the court indicated that the motion to dismiss was

29

entered, and a hearing on the motion to dismiss, upon the petition and supplement thereto and the pleas or answers thereto was set for February 10, 1956. On February 23, 1956, the joint answer of Stanley Slusarz, the plaintiff, and Harriet Slusarz, the defendant, to the intervening petition and supplemental petition of the petitioner Edward L. S. Arkema was filed in court. It set forth that the intervening petitioner Edward L. S. Arkema was not the attorney of record for either Stanley Slusarz, the plaintiff, or Harriet Slusarz, the defendant. This had not been alleged by Arkema and was not in dispute. It admitted that intervening petitioner had rendered services, but alleged they had been paid for. It alleged that there was pending before the court a motion of the plaintiff and the defendant to dismiss the partition suit, and that the dismissal of that suit on that motion would dispose of the entire case, including the intervening petitioner's petition. The answer did not deny the making of the agreement that the fees of the intervening petitioner were to be fixed by the court and that they were to be paid out of the proceeds of the sale of the real estate involved in the partition suit belonging to the plaintiff Stanley Slusarz.

On February 27th the intervening petitioner filed his reply to the answer and denied that he had been paid in full for his services, and realleged that he had not been paid any money whatsoever for his services rendered to the parties since May 6, 1953.

 The claim which the intervenor urges is one for legal services rendered, and it is not connected in any way with the complaint in partition but antedated that. It is therefore not based upon any statutory provision for the allowance of attorneys' fees in partition matters. It has no relation whatsoever to the statutory attorney's lien where the attorney is allowed to keep property belonging to his client in his posses-

sion for the purpose of securing the payment of his fees. In the absence of any specific provision in regard to payment, the bill for the services of an attorney as fees is merely the bill óf a common creditor. The intervening petitioner has here alleged that the plaintiff and defendant had agreed that the legal services which he rendered both of them after May 1953 was to be paid from that share of the proceeds of the property involved in this partition proceeding to which the plaintiff, Stanley Slusarz, would be entitled after the amount thereof had been determined by a court. The intervening petitioner has not been entirely consistent as to what rights he thought had been created by this agreement. In his original petition he asked that his reasonable fees be determined and the amount due him be decreed to be paid out of the proceeds of the sale of the property belonging to the plaintiff, Stanley Slusarz. In the supplement to his intervening petition he asks that the amount due him be determined and that execution issue as upon a judgment at law, and, that the real estate be impressed with an equitable lien for the amount of said decree, and in this court he has spoken of his rights as a special creditor without saying what a special creditor is or what his rights are, and claims a specific lien upon the real estate.

■ It is of course true that the provisions of the Civil Practice Act have been made to apply to all proceedings under the Partition Act, except as stated in the latter act. (Ill. Rev. Stats., 1955, chap. 106, par. 71.) It is equally true that those provisions do not change the substantive law in regard to the remedy of partition, and the jurisdiction of the subject matter which is effected by partition is the joint ownership of real estate (chap. 106, par. 44), and the remedy given, which is the division of the real estate or a sale of the real estate and the dis-

31

tribution of the proceeds thereof in accordance with the interests of the parties in the subject matter of the litigation as determined by the court.

Obviously the intervening petitioner was not a counterclaimant. He had been neither a plaintiff nor a defendant to the original action. He was not a party to that law suit. No remedy or relief was sought against him. He therefore was clearly not within the classification of persons under section 38 of the Civil Practice Act which permits the filing of counterclaims against other parties in the litigation.

█ Paragraph 1 of section 26.1 of chapter 110 Illinois Revised Statutes (Civil Practice Act), sets forth conditions under which applicant shall be permitted to intervene in an action. Sub-par. (c) of that paragraph is the only provision which might be applicable to the instant situation. It is as follows: "when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof." This of course contemplates that the applicant has some sort of an interest in or right to the property in the custody of the court which would be subject to distribution or disposition by the court. This is in harmony with the other provisions of the practice act in regard to the joinder of parties to a proceeding, which provide that both plaintiffs and defendants may be joined where they would be entitled to relief arising out of the same transaction or series of transactions. (Secs. 23 and 24.) The filing of an intervening petition involves the addition of a new party who claims to have some interest in the subject matter of the litigation. Here the jurisdiction of the subject matter of the litigation is the joint ownership of the land. The Joint Committee comments (Smith-Hurd Ill. Anno. Stats. 1955, ch. 110, sec. 26.1, pamphlet p. 32) indicate that

the new intervention section was adopted from section 21 of the Missouri Code, which in turn is a revision of Federal Rule 24. In re Vaughan v. Dickinson, 19 FRD 323, D. C. Mich. S. D. 1955, quotes from Moore's Federal Practice, 2d ed., vol. 4, wherein the author poses the question: "What kind of an interest must a petitioner have in property subject to the control of a court before he can claim an absolute right to intervene?" His answer is: "Obviously it must be an interest known and protected by the law: a claim of ownership or a lessor interest, sufficient and of the type to be denominated by a lien, equitable or legal."

██ It is generally the law that one has no right to intervene in any action unless he has some right to protect an interest in that action which is not being protected. 39 Am. Jur., Parties, sec. 60, p. 934. That is especially true in cases of partition, where the subject-matter jurisdiction of the court is the joint ownership of the land. One of the earliest cases in Illinois on this point is Marsh v. Green, 79 Ill. 385, 387, where the court said:

"As we understand the modern practice, any person feeling that he has an interest in the litigation may apply to the court, and be permitted to intervene and become a party, and have his rights passed upon on the hearing; and the court will permit him to become such party on a proper showing. *He would, of course, not be permitted to intermeddle when he had no substantial interest in the subject matter of the suit.*" (Our emphasis.)

That identical language was quoted with approval in the case of Miller v. Clark, 301 Ill. 273, 281. The application of such a doctrine, in a bill to remove a cloud, was explained in Ackley v. Croucher, 203 Ill. 530, 533, as follows:

33

"The original bill was filed by Mrs. Ackley, claiming to be the owner in fee, to remove as a cloud upon her title a deed which she had executed to Ida Moore, conveying property in which Croucher himself claimed an interest. He was clearly interested in the outcome of that litigation, and the court, upon a proper showing, permitted him to become a party thereto. He was in no sense a mere intermeddler, as counsel for plaintiff in error infers, having no substantial interest in the proceeding. According to his theory he owned at least a one-half interest, if not the whole of the property which was the subject matter of the original bill, and was therefore entitled to become a party. Marsh v. Green, 79 Ill. 385."

The general rule is that creditors *who have no lien against the premises* are neither necessary nor proper parties, and therefore cannot intervene in partition matters. 68 C. J. S., Partition, Sec. 78, p. 124. In an early partition proceeding in Illinois, in Horn v. Sayer, 184 Ill. App. 326, where the proceeding was brought by one of the heirs and it appeared that before the decease of the decedent the intervening petitioner had obtained a judgment against the decedent, and that when the decedent's estate had been opened the intervening petitioner had filed his claim in that estate and the claim had been allowed by the Probate Court and no inventory had ever been filed in the estate and the estate had not been closed, it was held that there was no error in permitting the intervention of such a creditor. In Masters v. Masters, 249 Ill. App. 252, which was a partition proceeding between joint owners of real estate and where the divorced wife of one of the joint owners sought to intervene, where although it was shown that in a prior divorce proceeding alimony had been allowed to her and the joint owner of the property was in arrears in making the payment of alimony, there was

34

no averment in the petition for the right to intervene that the alimony had been made a lien upon the real estate or that she had been awarded the right of execution against the property, the court held that the allowance of the intervention was improper, and on page 257 said:

"It is apparent, therefore, that on the face of the petition and the averments thereof the petitioner did not have any lien upon the real estate of the appellant at the time of the filing of her petition, nor upon the rights and interests of the appellant in the real estate involved in the partition suit, and that the court should therefore have denied the motion for leave to file the intervening petition. Wightman v. Evanston Yaryan Co., 217 Ill. 371."

It is obvious, therefore, that the intervenor here, not being a judgment creditor, had no interest as a common creditor in the subject-matter of the partition litigation, and therefore, on that basis, had no right to intervene.

Did this oral agreement alleged by the intervening petitioner give him some equitable right in the subject-matter of the litigation so that he had a right to intervene under sub-par. (c) of paragraph 1, section 26.1 of chapter 110, Illinois Revised Statutes (Civil Practice Act)? Pomeroy discusses the underlying principles of equitable liens, as follows:

"An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a *jus in re* or a *jus ad rem;* neither a debt nor a right of property, but a remedy for a debt. (Webster v. Nichols, 104 Ill. 160.)" (3 Pomeroy's Eq. Jur., 4th ed., sec. 1233.)

"The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to

specific property, such as a tract of land, particular chattels or securities, a certain fund, and the like." (sec. 1234, p. 2961.)

"The term 'implied contract' is a pure fiction . . . . . . . The class of equitable rights and liabilities which at law are referred to the fiction of 'implied contract' really exist *ex aequo et bono;* they arise wholly from considerations of right and justice, and from the application to particular conditions of fact of those maxims which lie at the foundation of equity jurisprudence." (Sec. 1238.)

Illinois has recognized equitable liens which arise wholly from a consideration of right and justice in cases where a tenant has made improvements in order to restore a building to use; where one of the joint tenants has made permanent improvements on property which have added to its value; and, where a vendor's lien exists. Oppenheimer v. Szulerecki, 297 Ill. 81, 87–88. It is clear that in the instant case there is no such equitable consideration relating to the improvement of the property or the protection of a seller which would create a so-called lien by implication so that an equitable lien could arise in favor of the intervenor here.

The other classification of equitable liens set forth by Pomeroy are liens arising out of express contract. He sets forth the principles as follows:

"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, . . . creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands . . . of the original contractor . . . . Un-

der like circumstances, a merely verbal agreement may create a similar lien upon personal property." (sec. 1235, p. 2962.)

Following the statement above quoted from Pomeroy that a mere verbal agreement would be sufficient to create a lien upon personal property, our Supreme Court in the case of Kukuk v. Martin, 331 Ill. 602, found that a lien might be created on hogs by parol, but said no lien was created in that case because there had not been sufficient designation of the particular hogs to which the lien should attach. In considering these equitable liens arising under contract, numerous cases in Illinois have held that a lien was not created because there was not a perfect designation of the property out of which the secured debt was to be paid. Freeman v. Equitable Life Assur. Society, 304 Ill. App. 517. (Compare Damron v. City of Eldorado, 300 Ill. App. 481.) In the case of Byron v. Byron, 391 Ill. 256, where the proceeding involved a bill to set aside deeds and partition the premises and declare an equitable lien for improvements made on the premises, the court held that the agreement there was merely one to pay back the money spent on the improvement and did not designate any particular property from which it should be paid, and that the agreement was not in writing. In Aldrich v. Ederer Co., 302 Ill. 391, there was a fund involved. It was the fund which had resulted from the taking of a certain portion of the premises under a condemnation proceeding. The land was subject to a 99-year lease and the County Court had divided the fund between the fee holder and the leasehold, or lessee. The lessor claimed a lien on the proceeds turned over by the County Court to the lessee, for the purpose of repairing the building on the premises and putting it in shape so that the lessor's security for the payment of the rental would not be jeopardized. The Supreme

37

Court held that the lessor was entitled to an equitable lien on the fund and said that the agreement between the parties, which must be in writing, was the lease which provided for the payment of rent by the lessor for the premises.

Several jurisdictions have held it is not necessary that the contract creating the lien be in writing. In Grayson v. Crawford, 119 P.2d (Okla.) 42, it was held that the agreement that the land would stand good for the debt was an oral one, but to the argument that the contract, being oral, was rendered invalid by the statute of frauds, the court said:

"Where the consideration for which the lien is given has been paid, so that the party asserting the lien has fully performed his part of the agreement and no rights of creditors or bona fide purchasers have intervened, the general rule is that an oral contract creating an equitable lien is not rendered unenforceable by the statute of frauds."

Craven v. Hartley, 135 So. (Fla.) 899, McFerran v. Louisville Title Co's. Receiver, 71 S.W.2d (Ky.) 655, Theatre Realty Co. v. Aronberg-Fried Co., 85 F.2d 383, and Jackman v. Newbold, 28 F.2d 107, also uphold that viewpoint in regard to oral agreements.

However, our Supreme Court in the case of Watson v. Hobson, 401 Ill. 191, under facts very similar to our instant case, in that an intervening petitioner was a law firm which had rendered legal services in setting aside a will so that the premises descended to the heirs at law who were parties to the proceeding, and where it was alleged that it was agreed that the fees of the attorneys would be a lien on the real estate and the rents therefrom until the same were paid and that they were unpaid, the court, in sustaining the dismissal of the third amended complaint, on page 203, said:

38

"The pleadings are very indefinite as to when the agreements relied upon were entered into but our construction of the allegations described above is that the claimed contracts for liens were made after the obligations of the property owners had been partly paid and had become balances due. We must hold that under such circumstances these claimants never at any time acquired such an interest in the real estate as should be protected under an equitable lien as defined and applied by this court. The only contention of these appellants seems to be that their services rendered were to be additionally secured by these liens on the premises because their debtors had no money with which to pay them and desired that they be protected. These alleged oral contracts for liens, as set forth in the pleadings, are clearly within the Statute of Frauds."

We are therefore compelled to find that the oral agreement between the intervening petitioner and the plaintiff and defendant in this case did not create an equitable lien which would give the petitioner such interest in the proceeds of the sale of the property as would permit him to properly intervene in the partition proceedings.

 The intervenor in this case did not have any interest in the subject-matter of the litigation—that is, the partition of the real estate, either equitable or legal, which would give him a right to intervene under any provision of the Civil Practice Act. The order allowing the intervention was therefore clearly in error. Judicially a court cannot vest itself with jurisdiction by error or render relief when jurisdiction has not been properly acquired. The fact that there was no objection to the filing of the original intervening petition, could not relieve the court from its obligation to deny the intervention when further pleadings made

39

it clear that no right to intervene existed. The intervening petitioner had, and has, a common-law action for services rendered, just as any other common creditor would have. The judgment in favor of the intervenor is therefore incorrectly rendered, the court having no jurisdiction, and must be reversed without prejudice to the claim of the intervening petitioner in a proper proceeding. Schaller v. Huse, 330 Ill. 345.

The order of May 29, 1957, in so far as it relates to the intervening petition of Edward L. S. Arkema and the master's fees of L. A. Wescott appurtenant thereto, is hereby reversed and the cause is remanded with directions to tax the master's fees against the intervening petitioner.

The partition proceeding having been finally dismissed, it is not necessary to issue further directions in regard thereto.

*Reversed and remanded with directions.*

FRIEND, J., concurs.

BURKE, P. J., dissenting:

The intervening petition of Edward L. S. Arkema, filed on June 15, 1954, pursuant to an order entered without opposition, asserted that he had performed services as a lawyer for both the plaintiff and the defendant, who agreed that the reasonable fee for his services would be paid by plaintiff out of his share of the proceeds from the sale of the realty sought to be partitioned. On November 30, 1955, the intervenor filed a "supplement" to his petition stating that neither party filed an answer or other pleading to his petition; that the parties had made up their differences; and that they had agreed upon a plan that they would not appear in court at any time the case should be called for trial in the hope that the suit

would be dismissed for want of prosecution. The intervenor asked that he have judgment. On January 9, 1956, the parties moved to dismiss the complaint for partition. On February 23, 1956, they answered the intervening petition and supplement. The master to whom the case was referred found that the intervening petition was in the nature of a counterclaim and that the intervenor had performed services of a reasonable value of $7,500 which were to be paid by the plaintiff from his share of the proceeds from the sale of the real estate. The chancellor entered a decree finding that the parties' motion to dismiss the intervening petition came too late; found the reasonable value for the services performed to be $3,250; allowed the motion to dismiss as to all parties except the intervenor; entered judgment in favor of the intervenor and against the plaintiff for $3,250; and provided that the master recover from the plaintiff and defendant $1,398.25 as his fees and costs.

The intervenor was an ordinary creditor claimant of the plaintiff. Hamilton v. Downer, 46 Ill. App. 541, 549; Bromwell v. Turner, 37 Ill. App. 561, 563. There does not appear to be any substantial dispute that the intervenor performed the services and that he is at least entitled to the amount granted him in the decree. The reasoning of the majority opinion is based upon procedural and not jurisdictional grounds. The parties had no objection to the filing of the intervening petition. They did not take any action from June 15, 1954, when the intervenor filed his petition, until January 9, 1956, when they moved to dismiss the complaint, and did not file an answer to the petition until February 23, 1956. It was not until then that they contended that the allowance of their motion for dismissal would render "further proceedings nugatory." The master and the chancellor concluded that the dismissal of the complaint should not affect

41

the right of the intervenor to have judgment for his fees.

If any of the original parties desires to contest the right to intervene, he must do so on the hearing of the petition. Fletcher's Equity Pleading and Practice, Sec. 55, page 81; Ackley v. Croucher, 203 Ill. 530, 533, 534. The parties who should have objected in time will not be permitted to object out of time. The decree sustains the right of the parties to dismiss their case. The intervenor had the right to bring a common law action against the plaintiff for the reasonable value of his services. The court had jurisdiction of the subject matter and of the parties. The right of the parties to dismiss their suit did not affect the right of the intervenor to maintain his action for reasonable fees. In effect, the intervening petition became a distinct complaint against the parties. The fact that the claim of the intervenor was brought within the title and number of the original case does not obscure the fact that Arkema had the right to a trial of his law suit. It would not be reasonable under the circumstances to tell Arkema that he should go hence and file the identical claim as a separate suit. Had the parties, or one of them, objected to the filing of the intervening petition, Arkema would have had an opportunity to file a separate common law action. There was no demand for a jury trial. There was a fair trial. The record shows without contradiction that the intervenor performed the services and he proved the reasonable value thereof. Section 42 of the Civil Practice Act states that all defects in pleadings not objected to in the trial court are waived. The only ground alleged by the parties in their oral motion to dismiss the original complaint for partition was that they had settled their differences. There was no attack on the intervening petition as a pleading.

42

In considering the procedure followed in this case it is timely to note that Section 44 of the Civil Practice Act provides that any plaintiff or plaintiffs may join any causes of action, whether legal or equitable or both, against any defendant or defendants; that the court may order separate trial of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues of the case; that legal and equitable issues may be tried together if no jury is employed; and that any cause of action, counterclaim, third-party claim or issue may be transferred at any time, by order of the court, from the law docket to the equity docket, or vice versa, as the nature thereof may require. Section 4 of that Act directs that the Act shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties.

I am of the opinion that the decree should be affirmed.