### Elmer E. Vaniman et al., Adm'r, etc., v. Alva L. Gardner et al.

1. EQUITABLE MORTGAGES—*Agreements Pledging Property as Security.*—While, as a general rule, any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common law or statutory mortgage, but which shows that it was the intention of the parties that it should operate as a charge upon the property, will constitute an equitable mortgage, and be enforced as such in a court of equity, yet a mere promise to pay out of the proceeds of the sale of the property is not sufficient to operate as an equitable mortgage upon the property itself.

The intention must be to create a lien upon the property, as distinguished from an agreement to apply the proceeds of a sale of it to the payment of a debt.

Bill of Foreclosure.—Appeal from the Circuit Court of Macoupin County; the Hon. Robert B. Shirley, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed December 10, 1901.

Statement,—On April 11, 1895, Anthony Roberts and his wife entered into the following written agreement with their son, Moss Roberts:

" Agreement between Anthony Roberts and Sarah J., his wife, of first part, and Moss Roberts, their son, second part. Witnesseth, that said Anthony Roberts is the owner of the N. W. ¼ of the N. W. ¼, section 24, township No. 12, range No. 6, west of the 3rd P. M., in Macoupin county, Illinois, on which all of said parties reside and occupy as a homestead; and, whereas, it is desirable that a new house shall be erected on said tract of land for the comfort and use of all said parties so long as they shall live upon said tract of land. It is therefore agreed by the said parties that said Moss Roberts shall erect on said premises a house which shall be convenient and suitable for the use of said parties, including the family of Moss Roberts. That Moss Roberts shall have the right to pull down the old house now on said premises and use the material thereon fit to be used in building the new house, and said new house shall be built and completed within the next ninety days after the date of this agreement.

And in consideration of the said building, the said parties of the first part. agree that in case they shall sell the said tract of land, then there shall be due and payable to said Moss Roberts out of the money arising from such sale the sum of $500, together with interest thereon, from the time of the completion of said house until paid, at the rate of six per cent per annum, and in case of the death of the said Anthony Roberts leaving no will by virtue of which said Moss Roberts shall become devisee and owner of said tract of land, then, and in that case, there shall be paid to said Moss Roberts, out of the estate of said Anthony Roberts, the said sum of $500, together with six per cent interest thereon from the completion of said house until paid.

(Signed)    Anthony Roberts,    (seal.)
            Sarah J. Roberts,    (seal.)
            Moss Roberts."    (seal.)

The instrument was filed for record and recorded in the recorder's office of Macoupin county, July 12, 1895.

The house was built by Moss Roberts with money obtained from a bank at Virden, Illinois, on notes executed by him and George Vaniman as security. The written agreement was delivered to Vaniman and afterward indorsed as follows:

" I assign the benefit of the within contract to Geo. Vaniman as security to him for signing notes.

(Signed)     Moss Roberts."

In 1898 Anthony Roberts and wife conveyed the land to Martha J. Roberts, wife of Moss Roberts, who, on August 18, 1900, executed note and mortgage on the land to Alva L. Gardner, to secure an indebtedness of $500, due ten days after date. Gardner filed a bill to foreclose. Appellants, the administrators of George Vaniman, who were made defendants, together with others, answered and filed a cross-bill, in which they set up that there was a lien in favor of the deceased, by virtue of the above quoted agreement, and its assignment, and a payment by them, as administrators of Geo. Vaniman, of the notes on which he was surety for Moss Roberts. The court sustained a demurrer to the cross-bill, holding that appellants had no lien on the land, and rendered a foreclosure decree in favor of Gardner.

RINAKER & RINAKER, attorneys for appellants.

KNOTTS & TERRY, attorneys for appellees.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

It is contended by appellant, first, that under the written agreement of April 11, 1895, an equitable lien or mortgage was given Moss Roberts upon the land in question, whereby equity will enforce the payment of the $500 specified in the agreement, as a first lien upon the land; second, that appellants are subrogated to all rights of Moss Roberts under the agreement by virtue of his assignment thereof to George Vaniman.

While, as a general rule, any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common law or statutory mortgage, but which shows that it was the intention of the parties that it should operate as a charge upon the property, will constitute an equitable mortgage and may be enforced as such in a court of equity, yet a mere promise to pay out of the proceeds of the sale of the property is not sufficient to create an equitable mortgage upon the property itself.

" The intention must be to create a lien upon the property, as distinguished from an agreement to apply the proceeds of a sale of it to the payment of a debt." Jones on Liens, Sec. 32; Gibson v. Decius, 82 Ill. 304; Hamilton v. Downer, 46 Ill. App. 541.

We are unable to see in the written contract involved in this case an intention on the part of Anthony Roberts to create a lien or charge upon the land. It did not obligate him to sell the land and clearly contemplated that he might or might not sell it, as he saw fit. It only provided two events in which there should be due his son the $500; one in case he should sell the land and the other in case he should die leaving no will under which his son should become owner of the land. In the former case the son was to be paid out of the proceeds of sale, and in the latter he should be paid out of the estate of Anthony Roberts. As we view it, the import of the contract was more to fix events for the maturity of an obligation than to pledge the land for its payment.

It is evident that there was no intention that Moss Roberts should have a lien on the land for the money in the event of his father dying intestate, because the language of the contract is, that in that event, he should be paid out of his father's estate. Again, the provision that in the event of sale by Anthony Roberts, the money should be paid Moss Roberts out of the proceeds of the sale, fully recognizes the right of the former to sell, and that right carried with it the power to invest his purchaser with the title free from any lien arising out of the contract. If the contract created

no equitable lien in favor of Moss Roberts, none, of course, can be held to exist in favor of his assignee.

The evidence shows that the $500 note to Gardner represented a *bona fide* debt, and there is nothing in the record to warrant a suspicion, even, that the giving of the mortgage to him had any other than an honest purpose to secure the debt.    Decree affirmed.