The Hibernian Bk. Ass'n v. Chicago T. & T. Co., 217 Ill. App. 36.

lessee has been led by the conduct of the lessor to believe that a strict compliance with the terms of the lease will not be insisted upon, it would be manifestly unfair to permit a forfeiture of the lessee's right under the lease because of the lessee's failure to strictly comply with such terms.

The judgment of the municipal court must be reversed and as the error complained of is one of law, the cause will be remanded to that court.

*Reversed and remanded.*

MR. PRESIDING JUSTICE MCSURELY and MR. JUSTICE HOLDOM concur.

---

## The Hibernian Banking Association, Defendant in Error, v. Chicago Title & Trust Company et al., Plaintiffs in Error.

### Gen. No. 25,361.

1. LIENS, § 2*—*when promise to pay out of proceeds of sale of premises does not create.* A promise to pay out of the proceeds of the sale of premises creates no lien thereon unless it affirmatively appears and is patent from the language of the instrument containing the promise that it was the intention of the party at the time of executing it to create such a lien upon the property.

2. MORTGAGES, § 12*—*what essential to creation of equitable mortgage.* While a written instrument entered into for the purpose of pledging realty as security for a debt, informal or insufficient as a common-law or statutory mortgage, may be held to operate as an equitable mortgage, yet there must be present, before such equitable mortgage can be enforced, the element of an intention of the executant that such instrument shall operate as a lien upon the property described; and an equitable mortgage is not created where an instrument states that a maker of notes is the owner of certain realty, and that such notes will be paid out of the proceeds arising from a sale of the realty, if it is sold.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. SUBROGATION, § 31*—*when right to waived.* A stipulation by which a lienholder agreed to subordinate his claims to three mortgage liens operates as a waiver of any rights of the lienholder to be subrogated to a payment made on one of the three mortgages.

4. MORTGAGES, § 138*—*when mortgagee entitled to pay off mechanics' liens.* Where a trust deed provided that the mortgagor should not suffer or permit any mechanics' liens on the premises, the mortgagee had the right to pay lien claims to protect his own security, and when so paid he had the right to be subrogated to the rights of the lien claimant.

5. USURY, § 38*—*who entitled to set up as defense.* A defense of usury is personal and cannot be invoked by judgment creditors or their lienors, and a junior incumbrancer is not in privity with a mortgagor so as to be able to set up such defense in his behalf.

6. USURY, § 46*—*necessity for pleading specially as a defense.* Usury as a defense must be especially pleaded. Section 7 of chapter 74, Rev. St. (J. & A. ¶ 6696).

7. APPEALS AND ERROR, § 1399*—*when finding of master not disturbed.* A finding of a master will not be disturbed unless it is manifestly against the weight of the evidence.

Error to the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in this court at the October term, 1919. Reversed in part, affirmed in part and remanded with directions. Opinion filed March 8, 1920. Rehearing denied March 22, 1920.

FRANK SCHOENFELD and DAVID K. TONE, for plaintiff in error Arthur R. Jones.

RYAN, CONDON & LIVINGSTON, for defendant in error; IRVIN I. LIVINGSTON, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is a proceeding in chancery to foreclose a certain trust deed in which all the junior incumbrancers and lien claimants appearing of record are made defendants.

The cause proceeded to hearing upon the amended and substituted bill of complaint, answers of certain

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

of the defendants, who set forth in such answers their several liens and claimed their several priorities, and replications of complainant to such answers. The defendant Arthur R. Jones filed a cross-bill seeking affirmative relief as to the claims and liens set out in his answer to complainant's amended and substituted bill, and the defendant Ella H. Davis and others also filed their cross-bill praying for affirmative relief on the several claims and liens set up in their respective answers, which involve two so-called equitable mortgage liens on the real estate, the subject of the original foreclosure proceeding. Issues were joined on these cross-bills. However, the pleadings as such are not in controversy; therefore no further reference thereto will be made except as may hereafter be necessary to an understanding of the contentions projected into the writ of error before us.

Complainant's bill was to foreclose a trust deed of what is known as the "Springer Building," executed on June 5, 1913, by Marguerite Warren Springer (who subsequently intermarried with one Ed. Oliver and who will be hereinafter referred to as Mrs. Oliver) to the Chicago Title & Trust Company as trustee; conveying lots 3, 5, 6, 7 and 8 and the south 15 feet in width of lot 4 and the north 7½ feet of lots 9 and 10, all in block 52, in School Section Addition to Chicago, etc., with the improvements thereon and everything therein contained, including the rents, issues and profits thereof.

The cause was referred to a master to take the proofs and report his findings of fact and law to the court, which he did, and a decree was entered by the chancellor varying in some important particulars the recommendations of the master.

The decree ordered the mortgaged Springer property to be sold by the master in default of the payment of $356,035.89, the amount found due complainant, with directions to the master to pay certain other liens,

hereinafter enumerated, in the chronological order of their enumeration, and if after so doing there should be a surplus from the proceeds of such sale still remaining in the master's hands, he shall report the same to the court to abide its further order.

In the decree the priorities were fixed in the order enumerated as follows, the amounts found due being as of January 15, 1919, with interest thereon at 5 per cent per annum thereafter:

1. The amount found due complainant for unpaid principal and interest, including solicitors' fees and moneys advanced for tax redemption, etc...$356,035.89

2. Amount due defendant Union Bank of Chicago under its trust deed...................... 30,062.50

3. Northern Trust Company as trustee under a trust deed securing a certain indebtedness.. 111,133.32

There is no dispute by any party in interest as to the correctness of the decree regarding the foregoing three items, either in amounts or priorities.

4. An amount due to certain parties, holders of certain notes of Mrs. Oliver, decreed to be secured by a so-called equitable mortgage upon the Springer property ............................... 39,506.09

5. Amount due Ella H. Davis and others, also adjudged to be secured by a so-called equitable mortgage upon the Springer property................ 70,650

6. A subsisting lien in favor of Wheeling Corrugating Company to the amount of ........... 1,115.37

7. To Arthur R. Jones a valid and subsisting lien upon the Springer property to the amount of ............................... 33,708.02

8. To Arthur R. Jones, owner of an indebtedness secured by a trust deed to Frank Schoenfeld, trustee, conveying the Springer property; amount found due thereon ............................... 66,712.65

9. That Samuel A. Albrecht as assignee of the First State Bank of Benson, in virtue of a judgment against Mrs. Oliver, entered in the superior court of Cook county, had a lien upon the Springer property to the amount of........................ 4,322.57

40    APPELLATE COURTS OF ILLINOIS.

The Hibernian Bk. Ass'n v. Chicago T. & T. Co., 217 Ill. App. 36.

10. That the defendant Arthur R. Jones, and John T. Hetherington had a valid and subsisting lien upon the mortgaged premises ratably without priority of either over the other—

as to Arthur R. Jones in the sum of..... 1,758.16
as to John T. Hetherington in the sum of 1,062.41

11. That defendant Mercer Davis, as assignee of a judgment obtained by Frank Sullivan against Mrs. Oliver in the circuit court of DeWitt county, Illinois, has a valid lien upon the mortgaged premises, to the amount of ........................................ 2,597

12. That the defendant W. A. Rowe had a valid and subsisting lien upon said mortgaged premises as assignee of a judgment obtained by the First State Bank of Benson against Mrs. Oliver et al., in the circuit court of Woodford county, Illinois, amounting to................................ 6,097.48

13. That the defendants Ella H. Davis et al., as executors of the estate of George Perrin Davis, deceased, had a valid and subsisting lien upon said mortgaged premises as assignees of a judgment obtained by the German-American Bank of Bloomington in the circuit court of Cook county against Mrs. Oliver, amounting to.......................... 3,857.98

Arthur R. Jones alone assigns errors on this record; they are ninety-three in number, but counsel have argued them under seven points, to which points we shall confine this opinion.

The first two points relate to and challenge the fourth and fifth liens, which are the so-called equitable morgage liens.

The third point questions the giving of an eighth lien to Jones for an item of $3,002.50 interest said to have been paid on Farwell notes.

The fourth point involves the item of $8,702 claimed to have been paid by Mrs. Oliver to Jones on the notes secured by trust deed to Frank Schoenfeld.

The fifth point relates to the holding that one of the sixteen $5,000 notes was for usurious interest.

The sixth point is a claim that it was error to deduct $2,400 paid by Jones on a lien claim for $5,832.93.

The seventh point complains of error in awarding a sixth lien to the Wheeling Corrugating Company claim. In the light of the conclusions at which we have arrived, it will be unnecessary to discuss this phase of the case.

We will first pass upon the priorities of the so-called equitable mortgages given priority in the decree, numbered 4 and 5 as above recited.

As to number 4, it appears that January 5, 1916, Mrs. Oliver, then Springer, executed seventeen principal promissory notes, payable to her own order and by her indorsed and delivered, held by several of the defendants, upon which the court adjudged to be due $39,506.09; that at the same time the maker of the notes executed, acknowledged and delivered the following writing:

"Chicago, Illinois, January 5, 1916.

"The undersigned, Marguerite Warren Springer, of Chicago, Illinois, has this day executed her seventeen principal promissory notes, numbered one to seventeen, both inclusive, aggregating the principal of $35,-428.00, payable to the order of herself, and by her endorsed, with interest at six per cent per annum, payable at the Central Trust Company of Illinois, and she hereby declares that she is the owner of the real estate premises known as 306-308-310-312-314-316 and 318 S. Canal street, Chicago, Cook county, Illinois. and hereby agrees with the holder or holders of said notes that in case, or whenever she sells or otherwise disposes of said real estate premises, she will cause the said notes to be paid out of the proceeds thereof.

Marguerite Warren Springer     (Seal)"

This instrument was filed for record in the recorder's office of Cook county on January 17, 1916.

On January 28, 1916, Mrs. Oliver, then Mrs. Springer, made five promissory notes, all payable to her own order and by her indorsed and delivered, due one year from date, three of said notes being for the

sum of $10,000 each, one for $5,000 and one for $25,000, which said notes are held by Ella H. Davis and others, same being given priority of lien number 5, as before recited, and upon which the decree found due the sum of $70,650. Coincident with the delivery of said notes the then Mrs. Springer executed, acknowledged and delivered the following writing:

> "Bloomington, Illinois,
> January 31, 1916.

"The undersigned hereby declares and states that she has executed and delivered her five promissory notes bearing the date of January 28th, 1916, payable in one year from date, and bearing interest at the rate of six per cent (6%) per annum, payable to the order of herself, and by her endorsed in blank as follows:

One note for the sum of Ten Thousand Dollars ($10,000.00);

One note for the sum of Ten Thousand Dollars ($10,000.00);

One note for the sum of Five Thousand Dollars ($5,000.00);

One note for the sum of Ten Thousand Dollars ($10,000.00);

One note for the sum of Twenty-five Thousand Dollars ($25,000.00);

all payable at the Peoples Bank, at the City of Bloomington, Illinois, and she further declares and states that she owes the said sums of money so evidenced as aforesaid, and that she is the owner in fee simple of Lots Three (3), Five (5), Six (6), Seven (7), Eight (8), and the south Fifteen (15) feet of Lot Four (4), and the North Seven and one-half (7½) feet of Lots Nine (9) and Ten (10) in Block Fifty-two (52), in the School Section Addition to Chicago, in Cook County, Illinois, and she further declares that in case said premises so described as aforesaid are sold, then that said notes heretofore described, shall be paid out of the proceeds of the sale of said premises.

(Signed) Marguerite Warren Springer."

Which writing was filed for record in the recorder's office of Cook county.

The master's conclusion upon these two documents as appears in his report is as follows:

"The master is of opinion, and concludes as a matter of law, that the instruments above described do not show any intention on the part of Marguerite Springer Oliver to create a lien or charge upon the premises described, and that the holders of the said notes are not entitled to any lien, equitable or otherwise, upon the premises described, by reason of said instruments; and that the said instruments were not intended to be, and do not constitute, equitable mortgages upon the premises hereinbefore described."

We are in entire accord with this conclusion of the master, because a promise to pay out of the proceeds of the sale of the premises creates no lien thereon unless it affirmatively appears and is patent from the language of the instrument itself that it was the intention of the party at the time of executing it to create a lien upon such property. While it cannot be gainsaid that a written contract entered into for the purpose of pledging realty as security for a debt, informal or insufficient as a common-law or statutory mortgage, may be held to operate as an equitable mortgage upon such property, yet there must be present, before it can be enforced, the element of an intention of the executant that such instrument should operate as a lien upon the property described; until it does so appear an equitable mortgage is not established.

In *Vaniman v. Gardner*, 99 Ill. App. 345, it was held that while, as a general rule, any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common-law statutory mortgage, but which shows that it was the intention of the parties that it should operate as a charge upon the property, will constitute an equitable mortgage and be enforced as such in a court of equity, yet a mere promise to pay out of the proceeds of the sale of the property is not sufficient to constitute an equitable mort-

gage upon the property itself. The intention must be to create a lien upon the property, as distinguished from an agreement to apply the proceeds of a sale of it to the payment of a debt. *Hamilton v. Downer,* 46 Ill. App. 541, sustains this principle and was affirmed in 152 Ill. 661; Jones on Liens, sec. 32; *Gibson v. Decius,* 82 Ill. 304. Such is, we think, the test to be applied in the instant case.

We cannot infer or extract from the language used in either of these documents any intention upon the part of Mrs. Springer, now Oliver, to create a lien upon the Springer property, or to create any charge thereon; they are simply agreements to pay the debts mentioned out of the proceeds of the property when sold, without any obligation upon her part to sell at any particular time. Nor is there any language in either of these writings from which a court of equity could, upon the application of any person in interest, coerce a sale for the purpose of paying the indebtedness set out in these instruments. The intent to create a lien is not open to inference; it must affirmatively appear from the document itself; for as said in *Hossack v. Graham,* 20 Wash. 184:

"If it had been the intention of the parties to have created a lien * * * it would have been an easy matter to make that fact appear * * *."

It is clear that these two instruments were no more than a promise to pay out of the proceeds of the sale of the property whenever it should be sold.

As items 4 and 5 are by this opinion eliminated from the decree, items 7 and 8, awarding liens to Arthur R. Jones, will automatically become fifth and sixth liens upon the Springer property.

Jones contends that $3,002.50 interest paid on the so-called Farwell mortgage, numbered 3 in the enumeration of the priorities before us, was paid to prevent foreclosure proceedings, and that he should be subrogated to the lien which Farwell had at the time the payment was made.

We think the contention that the payment was not made on the Farwell mortgage, but made and indorsed on the collateral note executed by Mrs. Oliver, held by Mrs. Farwell, under which the notes and trust deed were held as security, is sustained by the proof. While it may be doubtful as to whether the doctrine of subrogation extends *pro tanto* to a part payment only, still we think that Jones is barred under his stipulation in which he agreed to subordinate all of his claims to the first three mortgage liens; this operating as a waiver of the right, if it ever existed, in Jones to be subrogated to the Farwell mortgage for such payment, and that the decree therefore is in this regard without error.

We next come to an item of $8,702, which grows out of an $80,000 loan made by Arthur R. Jones to Mrs. Oliver. The transaction is much involved, but the evidence proves that the loan was made and that the money was paid either to or for the account of Mrs. Oliver. One Mackie was the agent of Mrs. Oliver in this transaction. The $80,000 loan was secured by a trust deed on the Springer property to one Schoenfeld as trustee, and when made was the fourth mortgage on that property. By reason of the Springer property being already incumbered to the amount of nearly half a million dollars, Schoenfeld claimed that the commission should be large and that he would expect $5,000 for commission and $500 for attorney's fees for preparing the papers, etc. These amounts were in fact paid to him by Jones. The controversy relates to a payment of $5,029.17, which Mrs. Oliver contends was in payment of a $5,000 note, while Jones contends that the money was received and applied to the paying off of construction claims of one Angus, who had a lien for some alterations in construction made by him on the Springer Building; that three other payments of $2,000, $1,000 and $702 thereafter made, were by Jones paid to Angus for construction and alteration work

46   APPELLATE COURTS OF ILLINOIS.

The Hibernian Bk. Ass'n v. Chicago T. & T. Co., 217 Ill. App. 36.

on the Springer Building; that these sums, totaling $8,702, were not payments on account of the mortgage indebtedness, but were payments made by Mrs. Oliver to Jones, which sum was credited to her general account by Jones.

The proof and the environing circumstances, we think, sustain Jones' contention in this regard. There was a provision in the trust deed securing these $80,000 notes by which Mrs. Oliver agreed not to "suffer any mechanic's lien to attach to said premises, nor do, nor permit to be done, to or upon said premises, anything that may impair the value thereof, or the security intended to be affected by virtue of this instrument." We think that under this Jones had a right to pay the Angus lien claims to protect his own security under the trust deed, and when so paid to be subrogated to the rights of the lien claimant. This the master found as between the parties to be their relative rights, but held that the judgment creditors had priority over the Jones liens for the items aggregating $8,702. In varying the master's report in this regard, the decree is erroneous.

In decreeing that one of the sixteen notes for $5,000 each, secured by trust deed to Frank Schoenfeld, trustee, was given as usurious interest, the decree is erroneous. Without going into the merits of the question of usury thus raised, suffice it to say that neither Mrs. Oliver nor McKey, trustee to her estate in bankruptcy, set up any such defense. Such defense is personal and cannot be invoked by judgment creditors or their lienors. Section 7, ch. 74, Rev. St. (J. & A. ¶ 6696), provides regarding usury that:

"The defense of usury shall not be allowed in any suit, unless the person relying upon such defense shall set up the same by plea, or file in the cause a notice in writing, stating that he intends to defend against the contract sued upon or set off, on the ground that the contract is usurious."

In *Home Building & Loan Ass'n v. McKay,* 217 Ill. 551, it is said:

"The statute provides that usury must be specially pleaded, and the fact wherein it is alleged the usury charged consists must be specifically alleged in the answer setting up the defense."

Again it is said in *Union Nat. Bank v. International Bank,* 123 Ill. 510:

"The right to set up usury as a defense is personal to the debtor. If any one is injured by the usury, it is he, and it is for him to say whether he has been injured or not. If he chooses to perform the contract, or to waive the defense of usury, no one else has a right to say that he shall not do so. It is for him to elect. * * *"

As to the right of a junior incumbrancer of the debtor to avail of the defense of usury, the court said in *Mason v. Pierce,* 142 Ill. 331:

"Nor can Mason set up or avail himself of the charge of usury. While the defense might be set up by the debtor or those in privity with him, a junior incumbrancer by virtue of a judgment lien is not in privity with the mortgagor so as to be able to set up the defense in his own behalf. This is so completely settled by our decision in *Union Nat. Bank v. International Bank,* 123 Ill. 510, as to require no discussion here."

It therefore follows that the decree is erroneous in eliminating the $5,000 note as usurious and in denying interest upon all of the notes. Jones is entitled to and should be allowed the $5,000 note with interest on all the unpaid notes from January 16, 1919.

The master and the chancellor both found that the Angus claim for mechanic's lien for $5,832.93 assigned to Jones was entitled to a credit of $2,400 paid thereon, which was paid not by Jones but by Mrs. Oliver, or her husband for her; and an examination of the testimony convinces us that this credit was properly allowed. Furthermore, the whole question is one of disputed fact, and unless we are able to say—which

we are not—that the conclusion of the master, who saw the witnesses, was manifestly against the weight of the evidence, we would not be justified in disturbing the finding of the master.

For the reasons heretofore stated, the decree of the circuit court is reversed and the cause is remanded with directions to entirely eliminate from the decree the two so-called equitable mortgages given priority as fourth and fifth liens, respectively; that the amount due on the $80,000 loan secured by the trust deed to Frank Schoenfeld, trustee, less payments found by the master to have been made by Mrs. Oliver, be included in the decree in the place and stead of the amount found due in the decree as lien number 8, and that in all other respects the decree is affirmed.

*Reversed in part, affirmed in part and remanded with directions.*

MR. PRESIDING JUSTICE McSURELY and MR. JUSTICE DEVER concur.