City of East Peoria, Appellant, v. Colianni and Dire Company et al., Appellees.

Gen. No. 9,523.

Opinion filed March 8, 1948.  Rehearing denied May 4, 1948.  Released for publication May 5, 1948.

BLACK, BLACK & BORDEN, MILLER, WESTERVELT, JOHNSON & THOMASON, GEORGE DONALDSON and FRED V. STIERS, all of Peoria, for appellant.

GEORGE Z. BARNES, of Peoria, FRANCIS L. BRINKMAN and JOSEPH I. BULGER, both of Chicago, for certain appellee.

CASSIDY, SLOAN & CRUTCHER, of Peoria, for certain other appellee.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

This case involves an action by the city of East Peoria, appellant, against Colianni & Dire Co., a contractor, and its surety Continental Casualty Co., appellees, for damages for breach of a contract to build a sanitary sewer system. This suit was consolidated with a subsequent action brought by the contractor against the City for damages and extras. The master in chancery recommended judgment for the City in the sum of $122,637.33. The City appeals from a decree of the circuit court sustaining exceptions to the master's report and entering judgment against the City in the sum of $52,459.82.

The complaint of the City, filed August 31, 1939, alleges that on October 24, 1938, the City entered into a contract with the defendant contractor for the construction of a sewer system; that the defendant Continental Casualty Co. was surety upon the performance bond; that the contractor started work, but on July 24, 1939, wilfully stopped work and refused to perform its contract; that by virtue of certain provisions of the contract, the City served notice of intention to terminate such contract for breach, and upon further refusal of the contractor to perform, did effect such termination; that the surety elected not to take over the contract; that time is of the essence of the contract and that construction was to have been completed by October 24, 1939; that such work should be finished to avoid unfavorable working conditions and to avoid danger of loss of a P.W.A. grant; that a new contract must be let for the completion of the work; that the letting thereof, performance thereunder, and the fixing of damages on account of breach by defendant should be under the supervision of a court of equity. The complaint prayed, among other things, for an accounting to fix damages. The answer of the contractor admitted the execution of the contract and bond and that

it began performance; denied that it refused to complete the contract; charged that the City wilfully hampered and obstructed the defendant in its work; that despite such hindrance it continued working until October 28, 1939, at which time the City compelled it to stop work; and denied that the contractor had defaulted. As an alternative defense the answer denied that the contract was valid and enforceable. The answer of the Continental Casualty Co. adopted, in general, the position taken by the contractor.

The complaint of the contractor charged that the City, its officers, and its engineers, conspired to conceal subsurface conditions, as a result of which no meeting of the minds occurred and no valid contract existed. It prayed that it be compensated for work done, for damages suffered, and for loss of profits. The City filed an answer generally denying these allegations.

The general picture of the situation may be completed with the following statements, based on the evidence. On October 24, 1938, a contract was entered into by the City and the contractor for the construction of a sanitary sewer system. The contract provided for payment on the basis of "unit prices" rather than a lump sum for the entire work. The quantities were estimated for the purpose of comparison of bids and for fixing the amount of the performance bond. Such total estimate, by defendant contractor's bid, totaled $309,990.50, and a bond for such amount was furnished by the contractor, with Continental Casualty Co. as surety. The contractor completed about 42 per cent of the work under contract. Thereafter, the City advertised for bids to complete the work and on October 31, 1939, awarded a contract to H. C. Willadsen Construction Co., at substantially higher unit prices than those in the Colianni contract. Willadsen performed about 52 per cent of his contract and work was stopped because the City's funds were exhausted. This percentage of 52 per cent amounted to about 30

per cent of the work covered by the Colianni contract. About 28 per cent of the work contracted for by Colianni has never been built. The work performed by Willadsen had a value of $166,281.53, but would have had a value of only $94,123.25 if it had been performed by Colianni under its contract with lower unit prices, so that the additional cost to the City for work done by Willadsen was $72,158.28. The work uncompleted by both contractors, if performed by the unit prices under the Willadsen contract would have cost $146,117.17, and under the Colianni contract unit prices would have cost $86,375.10, a difference amounting to $59,742.07.

One of the contentions made by defendant contractor is that the contract was not breached by it but by the City. It is urged that any delay was occasioned by the insufficiency of the plans and specifications, by reason of which the City's engineer frequently made substantial changes in them, redesigning the sewer system piecemeal in advance of operation by the contractor. The case of *Sperry v. Fanning,* 80 Ill. 371, is cited in support of this contention. In cited case, however, the issue concerned certain buildings and changes to be made therein, without any responsibility on the contractor to previously appraise the job to determine conditions for himself. The facts in the instant case are different. The contractor argues that the plans and specifications should have indicated the underground obstructions and underground conditions to be encountered, including water and gas mains, storm sewers, culverts, tunnels, telephone conduits, public and private utilities, and that borings should have been made to indicate the type of subsoil material, including quicksand. The fact that these were not shown but were in fact encountered forms the basis for many of the contractor's claims for extra compensation, and is directly involved in the termination of the contract. In this latter connection, the contractor,

after encountering certain wet and soft underground conditions, refused to proceed with performance unless compensated on a cost plus basis rather than on his unit price bid. It is noted that these plans and specifications had the prior approval of the P.W.A. and the Illinois Department of Public Health. In addition to this, the instructions to bidders (made a part of the contract) provide as follows:

"(9) UNUSUAL CONDITIONS: The contractor shall examine the location of the work and determine for himself the nature of any unusual conditions affecting the cost of the work to be performed, and shall include in his bid the cost thereof, it being understood that no additional payment is to made therefor. . . .

(11) BIDDER'S RESPONSIBILITY FOR CONDITIONS OF WORK AND SITE. Each bidder shall examine the plans and contract documents, visit the location of the work, examine the ground and site of the work and fully inform himself of all natural and legal conditions affecting the cost of the work to be performed including all subsurface or underground conditions that may be encountered, and shall make his own estimate of such costs and include same in his bid. It is understood that the bidder has taken all probable costs into consideration in the preparation of his bid and no additional compensation is to be paid him therefor."

Responsive to these instructions the defendant's proposal (a part of the contract) commences with this language:

"(1) The undersigned, having familiarized himself or themselves with the local conditions affecting the cost of the work and with the contract documents, including advertisement for bids, instructions to bidders . . . hereby proposes to perform . . . ."

It further appears that a prospective bidder, in "walking the job" would have seen fire hydrants, catch ba-

sins, storm sewer inlets, manholes, gas cut-offs, and other evidences of customary underground obstructions, and thus be placed on notice. Upon entering the contract, forewarned by this knowledge, it would seem that the contractor should now be estopped to question the sufficiency of the plans. While it is true that the plans and specifications cannot be recommended for use as a model for like projects, yet in the very nature of this type of work it is undoubtedly true that no perfect sewer construction was ever designed in an office. Mutual co-operation between the engineer and the contractor is an essential element in the obtaining of a satisfactory result when necessarily unforeseen difficulties are bound to arise in the course of construction.

In the case of *Michuda v. Sanitary Dist. of Chicago,* 305 Ill. App. 314, a sewer contractor brought suit against the district, alleging misrepresentations as to soil conditions. In denying relief the court said: ''In the instructions to the bidders they were informed that they must carefully examine the entire site of the work and adjacent premises and inform themselves thoroughly as to the difficulties involved. .. . .in our opinion, . . . the plaintiff did not have the right to rely solely on the soil information chart.'' In *MacArthur Bros. Co. v. United States,* 258 U. S. 6, 42 Sup. Ct. 225, a contract was let by the government for construction of a part of the Sault Ste. Marie canal and its proposal stated that a certain part of the work was to be done in the ''dry'' and part in the ''wet.'' It was claimed that this was a misrepresentation in that all of the work was done in the ''wet'' at a much higher cost. The Supreme Court rejected the demand and stated it was the duty of each bidder before submitting his bid to visit the site of the work, examine the local conditions, inform himself as to the accessibility of the work, and to ascertain the character of the material to be excavated.

■■ In our opinion the delay in the performance was not occasioned by insufficiency of the plans and specifications, and this applies as well to the contractor's claim that his refusal to proceed was justified for the reason that he was entitled to a cost plus plan of payment instead of the unit price bid. There was no legal excuse for defendant's failure to perform and there was sufficient justification for the termination of the contract by the City. However, it is noted that the contractor is entitled to credit for certain items involving work not contemplated by the·plans but requested by the engineer for the City.

■ The contention of the defendant Continental Casualty Co. that it should be relieved from liability because a different type structure was in part built, and not the one contemplated by the plans, is not supported by the evidence, and its liability is the same as that of the defendant contractor.

■ The observation is justified that the defendant contractor bid the job on unprofitable basis and when this was realized, refused to further perform its contract. In the case of *Smith v. Farmers' State Bank of Alto Pass*, 390 Ill. 374, the court said: "There is no hardship or oppression in compelling the seller to do what he agreed to do when he thought it was to his advantage. . . . When contracting parties are competent to, and do, fairly contract, they ought not to be relieved from the agreement because it is not convenient to perform it. . . .the fact· that the contract cannot be performed without great and unlooked for expense, is not such an impossibility or such hardship as will excuse performance."

In general the evidence in this case is quite voluminous, and inasmuch as our conclusion as to law and fact coincide broadly with that of the master in chancery, we set out in a condensed form parts of such master's well-reasoned report. (The paragraph num-

bers used correspond to the paragraph numbers in such master's report):

(4) Finds that contractor commenced construction October 25, 1938; that contract provided for all work thereunder to be completed within 360 consecutive days; that the percentage of completion for each month from November, 1938, until work ceased in August, 1939, is as follows:

| | | |
|---|---|---|
| November, | 1938 | 3.78% |
| December, | 1938 | 7.45 |
| January, | 1939 | 6.61 |
| February, | 1939 | 1.49 |
| March, | 1939 | 3.81 |
| April, | 1939 | 6.92 |
| May, | 1939 | 5.78 |
| June, | 1939 | 5.57 |
| July, | 1939 | 1.57 |
| August, | 1939 | 1.18 |

(5) That the amount earned on the contract by contractor to August 31, 1939, less amount deducted for uncompleted sewers, back-fill, manholes, and damage to existing curbs and drains, was the sum of $125,912.06, and that the percentage of completion of the contract on such date was about 42.4%; that the amount paid to the contractor was the sum of $110,025.69, leaving an unpaid balance of $15,886.37 plus $11,070.04 for deductions for the above mentioned uncompleted sewers, etc.

(6) That shortly after the commencement of the work and until the work ceased, there was considerable disagreement between said contractor and the City and P.W.A. engineer in charge of said work on behalf of the Federal Government, relative to progress; that the City and the P.W.A. engineer made complaint to the contractor that the latter's equipment was insufficient

to properly proceed with the job and that the rate of progress was unsatisfactory and was such that the contractor could not finish within the 360-day period allotted, and that the City might lose a portion of its P.W.A. grant unless the rate of progress was increased; that in no month did the contractor perform the minimum average percent of work per month, to-wit: 8 1/3%, which would have been necessary to complete the job within the 360-day period.

(7)    That the contractor made complaint to the City that unusual subsurface conditions were encountered which delayed the rate of progress, and that the plans were not accurately drawn and did not show subsurface obstructions or soil conditions and, particularly, that quicksand was encountered especially in the vicinity of West Washington street; that quicksand had not been contemplated at the time of entering the contract; that the engineer for the City knew, or should have known, of such quicksand conditions and should have notified the contractor prior to its entering into said contract, and that the contractor should be allowed extra compensation for laying sewers where such conditions existed along West Washington street.    The master finds as a conclusion of fact and law that there was no fraudulent concealment or misrepresentation on the part of the City relative to quicksand or other unusual conditions and that such subsurface conditions, if unusual, were governed by the instructions to bidders.

(8)    That in the month of August, 1939, the contractor refused to proceed with construction in quicksand or water-bearing sand conditions unless some arrangement for extra compensation was made for such work, which was not acceptable to the City, and, consequently, work was stopped; that contractor then offered to proceed on a cost-plus basis, which was not acceptable to the City.

(9) That on August 28, 1939, the City adopted a resolution by which it gave notice to the defendant contractor and to the defendant surety company of the City's intention to terminate the contract unless the said contractor proceeded under said contract.

(10) That the City, on September 11, 1939, adopted a resolution by the terms of which such contract was declared terminated for failure of the contractor to abide by the notice contained in the prior resolution; that a copy of said resolution was served on both defendants, September 13, 1939.

(11) That on September 27, 1939, the defendant Continental Casualty Co. served a notice on the City that the former was relying upon and insisting upon its right and privilege to take over such contract within the 30-day period provided in such contract; that such company did not within such 30-day period take over said contract and did not complete the performance thereof. The master finds as a conclusion of fact and law that the notice of termination and the termination of said contract by the City and the manner of termination, because of the alleged breach on the part of the contractor, were in all respects proper and sufficient and in full compliance with the provisions of the contract and that proper notice of the termination was given to both defendants, and that the City took all necessary legal steps for the termination of said contract and the readvertising for bids and the letting of a new contract to H. C. Willadsen Construction Company.

(12) That the City did thereafter widely advertise for bids for the completion of such sewer system and that the H. C. Willadsen Construction Company did thereupon make a bid and, upon its acceptance by the City, entered into a contract for the sum of $321,610.36 to complete the contract previously entered into by

the defendant contractor; that Willadsen commenced work under its contract about November 9, 1939, and continued until about August 31, 1940, performing work to the extent of $166,281.53, and was obliged to cease work because such City's funds were exhausted; that although the prices in the Willadsen contract seem unusually high in comparison with the Colianni contract prices, there has been no evidence of fraud or collusion between such City and the Willadsen company.

(13)  That the work performed by, Willadsen, having a value of $166,281.53, would have had a value of only $94,123.25 if the same had been performed by Colianni under its contract prices; that the additional cost to the City, by reason thereof, is $72,158.28.

(14)  That on August 17, 1938, the City obtained a grant from the Federal Emergency Administration of Public Works in the amount of 45% of the estimated cost of the proposed sewer system but not to exceed in any event $213,545.00, which grant was accepted by the City, August 30, 1938; that such grant provided that the City would commence work on the project not later than 8 weeks from August 17, 1938, and would in any event complete construction of the sewer within 14 months from the time of commencement; that the City was notified by the P.W.A. on March 28, 1939, on April 7, 1939, on April 28, 1939, and on August 17, 1939, that the rate of progress on the contract with the defendant contractor was not satisfactory; that the equipment was unsatisfactory and insufficient in amount and that unless said contractor showed marked improvement in progress that the balance of the P.W.A. grant would be canceled.  The master finds as a conclusion of fact that the City was properly and legally justified in adopting its resolution declaring its intention to terminate the contract, which resolution is referred to in paragraph 9 hereof.

(15)  That the defendant Colianni has advanced the reasons referred to in paragraph 7 hereof for refusing to proceed with performance after July 24, 1939, unless the contract was reformed and such defendant compensated for alleged extra work on a cost-plus basis.  The master finds that such City did not conceal knowledge of any subsurface conditions nor make any representations to the defendant concerning the same; that in any event it was the duty of the contractor, under the instructions to bidders, to examine the location of the work and to determine for itself the nature of any unusual conditions, including all subsurface or underground conditions.  The master finds as a conclusion of fact and of law, there being no proof of fraud, that under the provisions of the contract the City assumed no responsibility for subsurface conditions and that such responsibility was entirely upon the contractor.

(16)  That another reason advanced by the defendant Colianni for nonperformance was that the contract was a unit-price contract and the quantities therein were not accurately stated, with the result that the defendant submitted an unbalanced bid and as a result Colianni was unduly prejudiced by reason of said mis-statement of quantities of units required; that as a conclusion of fact this defense has not been sustained for the reason that the instructions to bidders provides that the quantities of unit-priced items are approximate only and to be used as the basis of comparing bids and for fixing the amount of the performance bond; that no showing has been made that there was any fraud or misrepresentation on the part of the City in securing said bid on the quantities as stated in the proposal.

(17)  That another matter of defense on the part of the contractor is that the plans and specifications were so inaccurate that it was impossible to construct a

sewer system in accordance therewith; that as a conclusion of fact the plans and specifications were not accurate or in accordance with the best engineering practice, nevertheless, that they were proper and sufficient for the intended purpose; that any contractor possessing ordinary and usual experience could properly construct such system in accordance with such plans; that the Willadsen Company proceeded under its contract under said plans and found no cause of complaint; that as a conclusion of fact the errors and defects in said plans were not sufficient either in fact or in law to justify Colianni in not proceeding under its said contract.

(18) That as a conclusion of law and of fact, the defendant Colianni, on July 24, 1939, stopped work and refused to perform its contract without good or sufficient reason; that Colianni should have continued with performance even though it was evident that it could not complete the same within the fixed time limit, since it had completed only about 44% of the contract in 5/6 of the time allotted; that the matter of payment or extra compensation for subsurface obstructions encountered or unusual subsurface conditions should have awaited an adjustment after completion of the contract; that as a conclusion of law and of fact, Colianni was not justified in ceasing work and abandoning the contract.

(19) That as a conclusion of fact and of law, there was an abandonment of the contract by the defendant Colianni after service of notice of termination upon it and its surety.

(20) That as one element of damages the City is entitled to recover from the defendants the sum of $72,158.28, which represents the difference in price of the work performed by Willadsen over what it would have cost had it been performed by Colianni, as referred to in paragraph 13.

(21) That the City claims as an element of damages its loss of a portion of the P.W.A. grant; that Colianni completed work valued at $136,982.10; that Willadsen performed work at, based on the Colianni unit prices, the value of $94,123.25, making a total of $231,105.35; that the P.W.A. grant of 45% was based upon the estimate of $309,990.50, in consequence of which, the difference between the contract price and the work actually constructed under the Colianni unit-price was the sum of $78,885.15; that the City therefore claims that it has lost 45% of such last-named sum, or $35,498.32, by reason of its failure to obtain the balance of the grant.

(22) As a conclusion of law, the P.W.A. grant is in the nature of an executory gift and is therefore not enforcible in law; that such element of damages so claimed is speculative in character and should not be allowed.

(23) That Willadsen was obliged to complete work on sewers partially constructed by Colianni, not under the Willadsen contract, but on a cost-plus basis amounting to the sum of $3,874.58; that this sum is properly allowed to the City as an element of damages.

(24) That by reason of the breach of contract, the City was obliged to expend the sum of $2,627.25 for hiring inspectors to inspect the work done under the Willadsen contract, which amount is properly allowable as an element of damages to the City.

(25) That under the City's contract with its engineer, such City paid to the engineer the sum of 6½% of the construction cost of the sewer system; that the City was obliged to pay, as set forth in paragraph 13, the additional sum of $72,158.28 for work performed by Willadsen; that 6½% of such additional cost amounted to the sum of $4,690.29, which is properly allowable as damages to the City.

(26)   That the City issued bonds to provide a portion of the funds for financing said work; that the amount of interest which the City was obliged to pay between the date of default of Colianni and August 31, 1940, being the date that Willadsen finished its work, was the sum of $7,855.31, which amount is properly allowable as an element of damages to said City.

(27)   That another portion of the sewer system was a sewage treatment plant, construction of which was to be simultaneous with the construction of the work performed by Colianni; that said sewage treatment plant was completed and was thereupon obliged to stand idle because the rest of the sewer system had not been completed; that it was necessary to maintain said treatment plant and said City expended $2,114.59 for labor and other costs in maintaining said idle treatment plant from the time of default of Colianni to August, 1940, when Willadsen completed its work, and that such amount is properly allowable to the City as an element of damages.

(28)   That the city is also claiming damages for the estimated sum which will be required to complete said sewer system; that at the time the Willadsen contract was awarded, advertisement for bids was widely and adequately made; that the Willadsen contract, although much higher than the Colianni contract bid and unit prices, is a fair and just basis for the measurement of damages occasioned by the default of Colianni; that although Willadsen did not complete its work because of insufficient funds in the hands of the City that, nevertheless, such insufficiency of funds was the direct result of the breach of contract by Colianni; that the unit prices in the Willadsen contract have not been shown to be unfair or unjust and constitute the only available method of measuring the damages to be computed on the uncompleted work.

(29)   That the City has determined that the actual cost required to complete said proposed sewer system, based upon physical measurements upon the ground and based upon prices under the Willadsen contract, is the sum of $146,117.17; that such cost, based upon the unit prices on the Colianni contract, would have been the sum of $86,375.10, and that therefore the loss to the City for future construction is the difference in said amounts or the sum of $59,742.07, which amount is properly an element of damages to be recovered by said City.

(30)   That the City is claiming the sum of $3,000.00 damages for additional inspection fees when work on said sewer system is resumed and brought to completion, but the master finds that the Willadsen contract was to be performed within 300 days but in fact the work was not completed at the expiration of 300 days and that therefore all of the money that should have been expended for inspection has already been expended by the City; that therefore the cost of future inspection should be borne by the City and is not a proper element of damages in this proceeding.

(31)   That the City, under its contract with its engineer, is obliged to pay 6½% engineering fees, as discussed in paragraph 27; that the City will be obliged to pay the additional sum of $59,742.07 as the additional cost for the balance of the system; that 6½% of this sum is the sum of $3,888.23, which amount is properly allowable as an element of damages to the City.

(32)   Recapitulation of damages of City:

(a) Added cost to the Plaintiff, City of East Peoria, Illinois, of construction completed under Willadsen contract over the cost of that work at Colianni

& Dire Company's contract unit prices, as mentioned in paragraph 20........$ 72,158.28

(b) Cost of having Willadsen Construction Company complete certain unfinished work by Colianni & Dire Co. on sewers installed by Colianni & Dire Co., as set forth in paragraph 23 of this report.. 3,874.58

(c) Cost of inspection, occasioned by lengthening period of construction, as paid by City during Willadsen construction, and as set forth in paragraph 24 of this report .............. 2,627.25

(d) Extra engineering fees occasioned by increased cost of system on work performed under Willadsen contract, as shown in paragraph 25 of this report.. 4,690.29

(e) Loss of use of sewer system, being the amount of interest which had to be paid on the bonds issued to defray the cost thereof, as shown in paragraph 26 of this report ........................ 7,855.31

(f) Damages sustained for maintenance of idle sewage treatment plant, as shown in paragraph 27 of this report........ 2,114.59

(g) Damages sustained by reason of the additional construction necessary to complete the system, based on the difference between the amount necessary to construct that work and the cost of constructing same work at Colianni & Dire Co. contract unit prices, as set forth in paragraph 29 of this report.......... 59,742.07

(h) Extra engineering fees which must be paid by the plaintiff, City of East Peoria, Illinois, for balance of con-

struction of project, based on increased
cost over Colianni & Dire Co. contract,
and as set forth in paragraph 31 of
this report ........................     3,888.23

Total damages........$156,950.60

(CREDITS AND SET-OFFS TO BE ALLOWED TO DEFENDANT,
COLIANNI & DIRE CO.):

(33)   That the total amount of work performed by
Colianni was $136,982.10; that Colianni was paid
$110,025.69.

(34)   That part of the difference between the two
sums in the preceding paragraph, amounting to the
sum of.$11,070.04, was withheld by the City for deduc-
tions on account of uncompleted sewers, etc.; that the
City has been allowed such damages in paragraph 32
of this report; that therefore the defendant Colianni
is entitled to this credit.

(35)   That the City has retained the sum of $15,886.37
of the money due Colianni as a percentage of the work
completed as a guarantee towards total completion of
the contract but, as herein stated, the total damages
allowed to the City contemplate a completion of said
system in its entirety, by reason of which said sum so
retained should be allowed to Colianni as a credit.

(36)   That Colianni has made claims for extra work
done under its contract in the approximate sum of
$26,000.00.

(38)   That such part of these claims as represent
extra compensation because of underground obstruc-
tions of existing utilities and drains should not be al-
lowed; that Colianni knew, or should have known, that
the City had gas and that gas mains and service con-
nections would be encountered; that Colianni knew

that the City also had a water system and that water mains and connections would be encountered.

(39) As to the claim for extras for laying sewers through a corduroy road under the surface of a portion of West Washington Street should be allowed, for the reason that the existence of such road was not within the knowledge of the contracting parties at the time the contract was made.

(40) That such part of said claims for extra compensation based upon unusual subsurface conditions such as quicksand or water bearing sand should not be allowed.

(41) That such part of said claims for extra compensation based upon maintaining a skeleton crew during stoppage of work and rental of machinery during stoppage should not be allowed, as the same is a condition of the contract which Colianni did contemplate or should have contemplated.

(42) That such part of said claims for extras based upon pavement replacement should not be allowed where the same was provided for in the contract but should be allowed where the pavement replacement is of a different kind than provided by the contract.

(43) That such part of such claims for extras occasioned by changing sewer lines different from the lines shown on the plans represents an extra and should be allowed.

(44) That such part of such claims for extras occasioned by tunneling under sidewalks, driveways, etc., should not be allowed where it was contemplated by the plans, but where the same was the result of a change order issued by the City and it was not provided in the plans such extras should be allowed, and that where tunneling under existing street pavement was for the

purpose of saving said pavement, extra compensation should be allowed.

(47) Certain claims in the sum of $10,604.90, being claims for compensation because of obstructions of existing utilities, etc., are disallowed.

(48) The claim of $1,082.82 for extra work caused by laying sewer through a corduroy road, discussed in paragraph 39, is allowed.

(49) Claims in the sum of $2,653.84, representing extra work occasioned by unusual subsurface soil conditions, as discussed in paragraph 40, are disallowed.

(50) Claims for $4,100.16 are disallowed, as claims for maintenance of skeleton crews during work stoppage, etc., as discussed in paragraph 41.

(51) Claims for $261.06 representing changes in the sewer line, as discussed in paragraph 32, are allowed.

(52) Claims for $2500.90 for changing the type of pavement replacement, as discussed in paragraph 42, are allowed.

(53) Claims for $315.80 for changing sewer line, as discussed in paragraph 43, are allowed.

(54) Claims for $875.86 for changes in the sewer line, as discussed in paragraph 43, are allowed.

(55) Claims for $445.47 occasioned by changing sewer lines, as discussed in paragraph 43, are allowed.

(56) Claims for $91.81 occasioned by changing sewer lines, as discussed in paragraph 43, are allowed.

(57) Claims for $922.31 representing expense of tunneling under pavements, as discussed in paragraph 44, are allowed.

(58) Claims for miscellaneous extras in the sum of $860.03 are allowed.

(59)  Recapitulation of Credits and Set-Offs Allowed
to the Defendant, Colianni & Dire Co.:

(a)  Deduction by City of East Peoria
for uncompleted work and damage
to existing curb and drains, as al-
lowed in paragraph 34...........$ 11,070.04

(b)  Retained percentage of work com-
pleted by Colianni & Dire Co., as
allowed in paragraph 35.......... 15,886.37

(c)  Extra work, allowed in paragraph 48     1,082.82
(d)  Extra work, allowed in paragraph 51       261.06
(e)  Extra work, allowed in paragraph 52     2,500.90
(f)  Extra work, allowed in paragraph 53       315.80
(g)  Extra work, allowed in paragraph 54       875.86
(h)  Extra work, allowed in paragraph 55       445.47
(i)  Extra work, allowed in paragraph 56        91.81
(j)  Extra work, allowed in paragraph 57       922.31
(k)  Extra work, allowed in paragraph 58       860.83

Total credits and set-offs  $  34,313.27

''(60)  I therefore find that the total damages sus-
tained by the plaintiff, City of East Peoria, Illinois, on
account of the breach of contract by said defendant,
Colianni & Dire Co., is the sum of $156,950.60, and that
the total amount of credits and set-offs to be allowed
to the defendant, Colianni & Dire Co., for set-offs
against said damages, is the sum of $34,313.27, leaving
a balance of $122,637.33 as the net amount of damages
sustained by the plaintiff, City of East Peoria, Illinois.

(64)  That in suit No. 13077 filed by the City, an in-
junction was granted restraining Colianni from re-
moving any of its plant equipment or machinery from
the City of East Peoria, which injunction remained in
full force and effect until May 15, 1940, at which time
it was, by order of court, dissolved, and the question of
damages was reserved for the determination of the
Court until after the determination of the issues in-
volved in this proceeding.

(65) I therefore find that the equities in said cause No. 13077 are with the plaintiff, City of East Peoria, Illinois, and that the material allegations of the Amended Complaint have been sustained by the evidence, and I therefore recommend that a decree be entered herein, finding that the defendant, Colianni & Dire Co., has defaulted in its said contract with the plaintiff, City of East Peoria, Illinois, and that the net damages sustained by the said plaintiff, City of East Peoria, Illinois, on account of said breach of contract, is the sum of $122,637.33, and further recommending that judgment for said sum be entered in favor of said plaintiff, City of East Peoria, Illinois, and against the defendants, Colianni & Dire Co., and the Continental Casualty Company.

(66) I further find that the plaintiff, Colianni & Dire Co., in suit No. 13104, has not sustained the material allegations of its said Complaint against the defendant, City of East Peoria, Illinois, in said suit, except. insofar as said claim for extra work has been allowed, as hereinbefore set forth, and except insofar as the question of damages may be involved in said matter of the injunction and its dissolution, as hereinbefore set forth; and I therefore recommend that the Complaint in said suit No. 13104 be dismissed for want of equity, except for said matters of compensation for extra work, as hereinbefore set forth, and except on said matter of damages arising out of said issuance and dissolution of said injunction, hereinabove mentioned and set forth.''

■■ In our opinion the findings of the master in chancery are entitled to great weight and should have been followed by the court. The fact that the record is voluminous and the findings are based on the conflicting testimony of witnesses heard by the master lend additional weight to the report, as the master's opportunity to judge their intelligence and candor is greater than that of the court. (*Hibernian Banking*

*Ass'n v. Chicago Title & Trust Co.,* 217 Ill. App. 36,
affirmed 295 Ill. 537; *Baker v. Abbott Mfg. Co.,* 212 Ill.
App. 476.) Under these circumstances, the Appellate
Court is not bound by the rule that the findings of the
chancellor will not be disturbed unless they are against
the manifest weight of the evidence, for the chancellor
**having heard** no new evidence is in no better position
than the Appellate Court to weigh the evidence which
was taken before the master. (*Kosakowski v. Bagdon,*
369 Ill. 252, 258; *Kasbohm v. Miller,* 366 Ill. 484, 498;
*Oliver v. Ross,* 289 Ill. 624, 637.)

From the foregoing we are of the opinion that
the City was justified in terminating the contract; that
both Colianni & Dire Co. and Continental Casualty Co.
are liable in damages to the City of East Peoria; that
such damages amount to $156,950.60, and that such
amount should be credited with the sum of $34,313.27,
due Colianni & Dire Co. as set-offs, leaving a net
amount due of $122,637.33. It is further our opinion
that the circuit court erred in not approving the report
of the master in chancery and in entering judgment
against the City in the sum of $52,459.82. The judg-
ment of the circuit court is reversed and the cause re-
manded with directions to enter a decree in accordance
with this opinion and to proceed with the cause in due
course.

*Reversed and remanded with directions.*